**In the Matter of John CROCKETT, Doris J. Crockett, Debtors.**

**Bankruptcy No. 79 B 39112.**

United States Bankruptcy Court, N. D. Illinois, E. D.

April 11, 1980.

Bruce Katz, Groupe & Katz, Chicago, Ill., for debtors.

Manliff Simpson, Simpson, Cybak & Torres, Chicago, Ill., for GMAC.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This matter came on to be heard on the objection of General Motors Acceptance Corporation (GMAC) to confirmation of the debtors' plan of arrangement under Chapter 13 of the Bankruptcy Code.

The plan proposes to pay secured creditors the full value of their collateral, i. e., the secured portion of their claims, and 10% of the balance of their claims along with the other unsecured creditors. At the time of filing the petition, the debtors owed GMAC approximately $4,000 on the purchase of a 1975 Buick Regal which was purchased in January, 1979. GMAC insists that it is entitled to the full retail value of the automobile as reflected in industry used car guides plus 11% of that amount each year so that it will receive the "present value" of the collateral over the life of the plan. The debtors do not agree. They insist that GMAC is only entitled to installment payments over the life of the plan aggregating to the value which could presently be realized by GMAC at auction upon a repossession and sale.

The requirements for confirmation of a Chapter 13 plan are contained in Section 1325 (11 U.S.C. Sec. 1325) of the Bankruptcy Code. Specifically, Section 1325(a) provides with respect to secured claims:

> (a) The court shall confirm a plan if— . . . (5) with respect to each allowed secured claim provided for by the plan— . . . (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim . . ."

Thus, GMAC is entitled to money or property to the extent of the full value of its claim as of the effective date of the plan. The value of a secured claim is arrived at by reference to Sec. 506(a) of the Code which provides:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

■ Therefore, GMAC has a secured claim to the extent of the value of the vehicle and an unsecured claim to the balance.

The problem is how to go about determining value of collateral. Obviously the debtors are going to have a different view than the creditors. The second sentence of Section 506(a) says that in terms of splitting secured and unsecured claims the value is to be determined according to the various purposes of the case and a determination of value for one purpose is not necessarily determinative of value for another purpose. Thus, Sec. 506(a) acknowledges that there may be differing valuations for differing purposes; e. g., redemptions under Sec. 722 or other distributive provisions of Chapter 7, adequate protection under 361 or confirmation under 1325. See Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 68; House Report No. 95–595, 95th Cong., 1st Sess. (1977) 356, U.S.Code Cong. & Admin. News 1978, p. 5787; 124 Cong.Rec. H 11,095 (Sept. 28, 1978); S 17,411 (Oct. 6, 1978).

Even under Sec. 1325, if the creditor values his claim too high the debtor can choose the option of surrendering the collateral in full satisfaction of the secured claim. 11 U.S.C. § 1325(c). Still, the Chapter 13 creditor is more likely to argue for a higher value of collateral because (1) the value of the allowed secured claim under the plan will be greater and (2) that is the value against which adequate protection under Sec. 361 will have to be provided.

■ Under a Chapter 13 plan the secured claim should be valued with due regard to the value of the property to the estate. "[T]he proposed disposition or use of such property" (Sec. 506(a)) in the instant case is for the debtors' retention and use. Therefore, the debtors cannot eat with the hounds and run with the hares. Seeking retention of the property, they cannot insist on liquidation values to be paid to the creditor in installments. The value of GMAC's secured claim under 506(a) is enhanced by the continued use of the collateral in effectuating the debtors' performance under the plan, which value must be reflected in distributions under the plan.

In determining fair market value, the parties are entitled to adduce evidence at a hearing scheduled for that purpose. In such instances, a court appointed expert would no doubt provide the most expeditious and economical solution to a fairly complex evidentiary problem. The escalation of fuel prices and the threat of shortages, the increased demand for numerous imported models, the continued desirability of certain older models or types, and the lack of standard costs for maintenance and repairs are only some of the variables which make it difficult to rely on the so called official used car guides.

Neither side has requested the valuation hearing which, in a dispute, would seem to be necessary prior to confirmation for feasibility and other reasons. Instead, GMAC has merely argued in favor of retail value as reflected in the guides, while the debtor insists on auction or wholesale value, the price which GMAC would realize if the vehicle were repossessed.

■ The official guides generally contain a wholesale value, retail value and a loan value, about half way between retail and wholesale. Absent a hearing the court is compelled to use wholesale value. That is the value against which a financer of property generally measures its risk in the first instance. Therefore GMAC is in a sense receiving the value of its original bargain so long as it is adequately protected in respect to that value over the life of the plan.

■ Where fair market value (herein determined to be wholesale value) is to be paid a creditor in installments over a fixed period of time, the creditor is entitled to protection of the depreciation of its claim.

The debtor is correct in asserting that unmatured interest per se is disallowed pursuant to 11 U.S.C. sec. 502(b). However, in order to give the creditor full present value as required by sec. 1325(a)(5)(B), some form of depreciation payments over the life of the plan must be provided for.

A convenient yardstick to determine necessary incremental adjustments is the current legal rate of interest. The current general interest rate allowable in Illinois is 9% per annum. Ill.Rev.Stat. ch. 74, Sec. 4, as amended by P.A. 81–1097, effective Nov. 8, 1979, 7 Ill.Legis.Serv. 1979 (West).

The Bankruptcy Reform Act, 11 U.S.C. sec. 361, provides for the "adequate protection . . . of an interest . . . of an entity in property." This concept is founded on Fifth Amendment protection of property interests. The Bankruptcy Court is a court of equity and, as such, must apply this underlying policy consideration whenever construing the Act. While not specifically providing for interest payments as a form of adequate protection, Sec. 361(1) says that the debtor may be required to make periodic cash payments to cover decreases in value of the collateral being used by the estate.* Moreover, the legislature expressly intended to give the courts great flexibility in formulating methods of protection appropriate to the circumstances of each case. H.Rep. No. 95–595, 95th Cong., 1st Sess. (1977) 338–340. *See also General Motors Acceptance Corporation v. Lum,* 1 B.R. 186, 188 (Bkrtcy.E.D.Tenn.1979).

Section 1325(a)(5)(B)(ii), *supra,* provides that the value distributed under the plan be not less than the value of the claim as of the date of confirmation.

The legislative history indicates that to give full value to the allowed claim pursuant to section 1325, there must be payment of present value; i. e., value plus incremental adjustments.

Of course, the secured creditors' lien only secures the value of the collateral and *to the extent property is distributed of a present value equal to the allowed amount of the creditor's secured claim the creditor's lien will have been satisfied in full.* Thus the lien created under section 1325(a)(5)(b)(i) is effective only to secure deferred payments to the extent of the amount of the allowed secured claim. 124 Cong.Rec. H 11,107 (Sept. 28, 1978); S 17,423 (Oct. 6, 1978). (Emphasis added.)

This language is quite a mouthful. But it is manifest that the only way the plan payments can amount to "a present value equal to the allowed" secured claim is by provision for depreciation or interest payments.

Therefore, the court finds that in order to give the creditor present value, an incremental adjustment of 9% per annum must be added to the fair market value, deemed to be wholesale value, of the secured portion of the debt.

An order of confirmation of the debtors' Chapter 13 plan will be entered in accordance with this opinion.

---

* This provision is derived from *In re Yale Express System, Inc.,* 384 F.2d 990 (2nd Cir. 1967). In that case it was not clear that the required payments were sufficient to compensate the secured creditors for their loss. In the instant case and under Code Sec. 361, increased payments would be required if the amount of interest allowed fell short of depreciation of the collateral.