**In re Howard John PENZ, Deanne Penz, Debtors.**

**Bankruptcy No. 89–70451.**

United States Bankruptcy Court, E.D. Oklahoma.

Aug. 4, 1989.

Robert Inglish, Okmulgee, Okl., for debtors.

Dominic Sokolosky, Tulsa, Okl., for Farm Credit Bank of Wichita, Kan.

## ORDER

JAMES E. RYAN, Bankruptcy Judge.

*(Determining Amount of Creditor's Secured Claim)*

On July 27, 1989, a contested hearing was held to consider the Motion for Valuation of Security (Docket Entry # 18) filed by Farm Credit Bank of Wichita, Kansas (Bank) with the above Debtors' Response (Docket Entry # 24).

Appearances were made by D. Sokolosky for Bank and R. Inglish for Debtors.

After review of the Pre–Trial Memorandum, the evidence and the law of this core matter, the following Order shall constitute the ruling of this Court.

## FINDINGS OF FACT

1. Bank's claim, filed July 11, 1989 in the above matter, is in the amount of $1,526,470.21 and is secured by a State Court Judgment foreclosing a first Real Estate Mortgage upon approximately 2,693 acres situated in Bryan County, Oklahoma, which is property of this estate.

2. Debtors have occupied the involved acreage at all times since granting the aforementioned Mortgage as a residence while conducting farm and ranching operations thereon. Debtors intend to continue their use of the acreage as in the past throughout the performance of their reorganization.

3. Debtors are unable to provide any books or records that would indicate the income and direct operating expense for the past two calendar years.

4. The property of this estate is divided into two tracts which are geographically separated by approximately twelve to fourteen miles of rural dirt road. Tract 1 is known as the Bokchito property and consists of almost 1,600 acres. Upon this tract is situated the eight year old residential dwelling of Debtors containing approximately 2,400 to 2,600 square feet. Debtors' past and present use of this tract is the grazing of 140 head of cows on approximately 1,300 acres of Bermuda and native pasture and "some" sprayed timber and the cultivating of approximately 45 acres for peanuts of the additional 300 acres available.

Tract 2 is known as the Blue River property and contains approximately 1,100 acres with its access limited to the use of rural dirt roads. This property contains no improvements and is not presently being used except a portion of the land capable of cultivation, approximately 120 acres, which is enrolled in a Department of Agriculture soil bank program. The remainder is native pasture and timber or lying dormant.

4. All appraisals offered by the parties are predicated upon the market value approach; that is, comparing the involved acreage in its present use, which is the

highest and best use, to that of various sales in the area. Comparative sale prices are adjusted by each appraiser in accord with subjective factors such as accessibility, size, type of soil, utilities, etc. All appraisals appear to be founded upon similar factors used for this adjustment. The market value approach may consider the distressed farm and ranch industry which exists in Bryan County, Oklahoma, depending upon the individual appraiser.

5. Debtors' appraiser lumped the entire 2,693 acres together and adjusted his comparable sales to what are obviously samples of distressed sales concluding a value of $200 per acre; for a total of $536,160. This per acre valuation includes up-land, bottom-land, Bermuda pasture, nature pasture, good timber, poor timber, etc.

7. Bank presented appraisals with more detail and testimonial support which ranged from $746,500 to $766,000. However, their conclusions are founded upon comparable sales that raise the question of what importance is the factor of acreage size (all appraisers admitted it is a factor) to which Debtors' property is being compared. That is, all comparative sales are of acreages at least fifty percent smaller than either of Debtors' two tracts. The common denominator in Bank's appraisals between Debtors' property and the comparative sales appears to be use or the capable use of the tract. Also, and quite naturally, Bank's appraisals minimize the undisputed fact that the farm and ranch market in Bryan County, Oklahoma is distressed.

### CONCLUSIONS OF LAW

A. Since the sole issue in this matter is the determination of the amount of creditor's secured claim, the applicable Bankruptcy Code Section must be incorporated into the analysis. Title 11 of the United States Code, § 506, provides, in part, as follows:

"(a) An allowed claim of a creditor secured by lien on property in which the estate has an interest, * * *, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, * * *. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, * * *." (§ 506)

■ B. It is recognized initially in this farmer's reorganization case that the valuation, though rote, is not made in a vacuum by this Court, but rather after consideration of the Debtors' right and obligation to disclose their intended use of creditor's collateral. The timely performance by Debtors of this commitment permits the Court to have available evidence as to the contributory value to this estate of the property encumbered to creditor.

C. Theoretically the estate in a reorganization case is a viable economic income producing unit. That is, the use of the estate (property) post-confirmation will produce net income with which to satisfy the Plan's monetary commitments. The existence of a viable income unit is labeled, for evaluation purposes, as the "going concern value" as opposed to a liquidation value.

■ D. It is felt that the marginal utility of each asset in a reorganization case is determined by the application of § 506 as it directs the debtor to declare his intended use of a creditor's collateral in his proposed reorganization and mandates the Court to consider this use in determining a value the involved property has to the whole income unit (estate).

■ This analysis recognizes that when a debtor intends to continue use of creditor's collateral, the Debtors are acknowledging the value of the collateral to be greater than if liquidated. Therefore, creditor's secured claim is entitled to be valued to the extent of its contribution to the entire estate vis-a-vis "going concern value" not a mere liquidation value.

■ E. Although the income approach to appraising an income producing asset appears to this Court to be the more appealing analysis, the limitations inherent therein are acknowledged. As in this case, Debtors possess no records upon which an income evaluation might be predicated and further, the instant Debtors appear to be under-utilizing the property of this estate.

F. This case is further a recognized exception to the usual methods used in evaluating income producing property; that is, it would truly be a venture upon uncharted waters to attempt to determine the capitalization rate to be applied in an income approach that was equitable for a family farmer in today's agricultural economy.

G. Necessarily, a modicum of subjectivity is injected in all appraisals. That is to say an appraisal is not an analysis that may be readily quantified, but rather a report of certain facts to which the individual appraiser subjectively applies accepted considerations. After reviewing the appraisals and restricting this conclusion to this case, the Court is not favorably moved by the in gross approach urged by Debtors' appraiser. However, Debtors' appraisal sets forth as comparable sales 2 and 3, which were not disputed, facts which appear to be acknowledgment by the appraiser of a local distressed farm and ranch land market. This consideration would almost be determinative of our task herein if it were not for the fact that the Debtors are not desiring to liquidate the subject property, but rather retain the property and continue to operate an economic income unit therefrom so as to satisfy by deferred payments the present value of Bank's secured claim.

H. Bank's appraisals though not directly recognizing the soft local farm and ranch economy, do contain sufficient information for a determination of the contributory value of creditor's collateral to this estate. Further, this Court does recognize that implicit in the Debtors' opinion to retain creditor's collateral is the Debtors' recognition that the income potential of the property is greater than its liquidation value.

I. Therefore, this Court concludes that the Bokchito property, which is necessary for Debtors' intended reorganization, be valued at $450,000; and that the Blue River property, also being retained, is valued upon the same considerations in the amount of $220,000. However, from the above mentioned evidence regarding the Blue River property, should Debtors find retention of the Blue River property not economically feasible and desire to return the acreage to Bank, the liquidation value is reduced to $192,500, provided the return is by conveyance capable of filing in the Bryan County Courthouse.

UPON THE ABOVE FACTS AND CONCLUSIONS, IT IS THE ORDER OF THIS COURT that the value of Bank's secured claim is $670,000, subject to Debtors' surrender of the Blue River tract as stated above, for purposes of treatment by Debtors in their intended Plan of Reorganization. Debtors are directed to file their proposed Plan of Chapter 12 Reorganization within ten (10) days after the entry of this Order. The Clerk of this Court, upon Debtors' filing, shall give notice of intended Confirmation Hearing upon the Plan to begin at 10:00 a.m. on September 1, 1989 to all interested persons.