In re Peter Gordon BALBUS, Debtor.

**BROWN AND COMPANY SECURITIES CORPORATION, Plaintiff–Appellant,**

v.

**Peter Gordon BALBUS, Defendant–Appellee.**

No. 90–2067.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 5, 1991.

Decided May 20, 1991.

As Amended June 4, 1991.

Thomas C. Power, Winston & Strawn, Washington, D.C., argued (Michael J. Lichtenstein, Allen S. Rugg, Melrod, Redman & Gartlan, P.C., Washington, D.C., on brief), for plaintiff-appellant.

Robert Glenn Mayer, Robert G. Mayer, P.C., Fairfax, Va., for defendant-appellee.

Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and MULLEN, United States District Judge for the Western District of North Carolina, sitting by designation.

ERVIN, Chief Judge:

Peter Gordon Balbus ("Balbus") filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. This petition was challenged by one of Balbus' secured creditors, Brown and Company Securities Corporation ("Brown"). Brown asserted that hypothetical costs of sale should be deducted when calculating the value of Balbus' real property providing security for his secured debt. If the costs were deducted, Balbus would not be eligible for relief under Chapter 13, title 11, United States Code. *See* 11 U.S.C. § 109(e).[1] Therefore, Brown filed a motion to dismiss or to convert Balbus' Chapter 13 filing to Chapter 7. The Bankruptcy Court found that hypothet-

ical costs of sale should not be deducted and, therefore, denied Brown's motion. The United States District Court for the Eastern District of Virginia affirmed the ruling of the Bankruptcy Court. This appeal followed. We find no error in the district court's ruling and hereby affirm.

I

On January 13, 1989, Balbus filed a voluntary petition for relief pursuant to Chapter 13, title 11, United States Code. Brown is a secured creditor possessing a judgment lien against Balbus; Brown filed a timely proof of claim.

██ Chapter 13 is available only to debtors who have noncontingent, liquidated, unsecured debts totalling less than $100,000 and noncontingent, liquidated, secured debts totalling less than $350,000. 11 U.S.C. § 109(e). In determining whether Balbus has less than $100,000 in unsecured debts under 11 U.S.C. § 109(e), the court must add the amount of unsecured debt and the amount by which secured creditors are undersecured. *See* 11 U.S.C. § 506(a).[2]

Balbus filed schedules of assets and liabilities, listing secured debts of $324,050.73 and unsecured debts of $57,968.73. Balbus listed one piece of real property and some personalty as security for the secured debts. The parties agree that the unadjusted fair market value of the real property is $282,500, and the fair market value of the personalty is $4,500. Fair market value of the collateral thus totals $287,000, leaving $37,050.73 of the secured claims undersecured. Adding $37,050.73 of undersecured debt to the listed $57,968.73 of unsecured debt results in a total of $95,019.46 in unsecured debt, which falls within the $100,000 limit in 11 U.S.C. § 109(e).

Brown filed a motion to dismiss or, in the alternative, a motion to convert Balbus'

---

1. 11 U.S.C. § 109(e) provides in pertinent part: Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000, ... may be a debtor under chapter 13 of this title.

2. 11 U.S.C. § 506(a) provides in pertinent part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, ... is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

247

Chapter 13 filing to a Chapter 7 filing, thus challenging the right of Balbus to proceed under Chapter 13. Brown argues that the amount of security represented by Balbus' real property should be reduced by the amount of the hypothetical costs of sale of that property. Brown uses a 6% figure for the costs of sale, reducing the dollar amount of Balbus' real property which is security for his secured debt. As a result of this reduction, Brown asserts that the secured claims are undersecured in the amount of $54,000.73, rather than the $37,-050.73 stated above. Adding $54,000.73 of undersecured debt to the listed $57,968.73 of unsecured debt results in a total unsecured debt of $111,969.46, which exceeds the $100,000 limit of 11 U.S.C. § 109(e).

The Bankruptcy Court determined that the hypothetical costs of sale should not be deducted from the fair market value of the real property. Because the hypothetical costs were not deducted, the total amount of unsecured debt was under the statutory limit. Therefore, the court denied Brown's motion to dismiss and motion to convert. Brown appealed this determination to the United States District Court for the Eastern District of Virginia. The District Court affirmed the decision of the Bankruptcy Court. Thereafter, the District Court denied Brown's motion for reconsideration. This appeal followed.

## II

■ In order to resolve this case, we must interpret § 506(a) of the Bankruptcy Code in light of the fact that Balbus intends to keep his real property rather than sell it. Section 506(a) provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a) (emphasis added). We review the interpretation of a statute *de novo*. *In re Malody*, 102 B.R. 745, 747 (Bankr. 9th Cir.1989).

Bankruptcy courts confronted with how to interpret "valuation" in § 506(a) when a debtor proposes to keep the secured collateral have reached conflicting results. *In re 222 Liberty Assoc.*, 105 B.R. 798, 802 (Bankr.E.D.Pa.1989); *In re Usry*, 106 B.R. 759, 760 (Bankr.M.D.Ga.1989). The controversy stems largely from the conflicting language in the above underlined sentences in § 506(a). *In re Boring*, 91 B.R. 791, 794 (Bankr.S.D. Ohio 1988); *In re Claeys*, 81 B.R. 985, 990–91 (Bankr.D.N.D.1987). The Bankruptcy Court for the District of North Dakota set out a discussion of the conflicting language in § 506(a) which is often cited. *See Claeys*, 81 B.R. at 990–91. The court explained:

Whether a valuation is made without regard for potential costs of liquidation depends, it seems, upon the emphasis given to the first and second sentences of section 506(a). The first sentence, providing that the claim is secured to the extent of the value of the creditor's interest in the property, suggests that since it is the creditor's interest that is being valued and not the collateral itself, it should not make any difference whether the debtor is retaining the property. Yet, the language of the second sentence suggests that the proposed disposition or use of the collateral itself must be considered when determining that value.

*Id.*

Some courts have determined that hypothetical costs of sale should be deducted even though the debtor intends to retain the property. *See In re Smith*, 92 B.R. 287, 291 (Bankr.S.D.Ohio 1988); *Claeys*, 81 B.R. at 992. Others have determined that the hypothetical costs should not be deduct-

ed. *See In re Courtright*, 57 B.R. 495, 497 (Bankr.D.Or.1986); *In re Bellman Farms, Inc.*, 86 B.R. 1016, 1019 (Bankr.D.S.D. 1988).

The legislative history of § 506(a) indicates that valuation should be done ad hoc and that no fixed approach is correct:

> "Value" does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6312. The Senate Report further clarifies the duty of the court in determining valuation:

> While courts will have to determine value on a case-by-case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property.

S.Rep. No. 989, 95th Cong., 1st Sess. 68, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5854.

As we have noted, one line of cases has determined that when a debtor proposes to retain the secured collateral, the hypothetical costs of sale should be deducted in order to determine the valuation of the creditor's interest in the collateral. The courts adopting this viewpoint focus on the first sentence of § 506(a). *See In re Smith*, 92 B.R. 287, 290 (Bankr.S.D.Ohio 1988) ("[B]ecause it is the *creditor's interest* in the estate's interest in property which must be valued, it is appropriate to deduct costs of sale regardless of whether a debtor intends to retain and use the property.") (emphasis in original); *Boring*, 91 B.R. at 795 ("Most courts recognize that the debtor's proposed retention and use of collateral does not emasculate the fact that it is in the first instance the *creditor's interest* in the collateral that must be valued.") (emphasis in original).

The Bankruptcy Court in the Eastern District of Pennsylvania explained the view of the courts which focus on the first sentence of § 506(a):

> [T]he fact that the first sentence references "the creditor's interest in the estate's interest in such property" causes these courts to conclude that valuation must be calculated from the vantage point of the creditor and what the creditor's interest would be worth if liquidation were necessary. Sale costs, they reason, would, in liquidation, be deducted from what the creditor would receive for the property.

*In re 222 Liberty Assoc.*, 105 B.R. 798, 803 (Bankr.E.D.Pa.1989) (rejecting this view and holding that hypothetical costs should not be deducted). The Bankruptcy Court in the Southern District of Ohio further explained this view that the proper emphasis is on the creditor's interest rather than the debtor's proposed use of the collateral:

> The distinction to be drawn is between the value of the property and the value of the creditor's interest in such property. The latter value is the one that is statutorily-mandated under § 506(a) of the Bankruptcy Code to be used in determining the secured status of a creditor in a bankruptcy case.

*In re Ward*, 13 B.R. 710, 712 (Bankr.S.D. Ohio 1981).

The *Ward* court held that hypothetical costs of sale in the amount of 10% should be deducted in determining the value of the property. *Id. See also In re Richardson*, 82 B.R. 872, 873 (Bankr.S.D.Ohio 1987) (reducing the fair market value of the property by 10% hypothetical costs of sale); *Smith*, 92 B.R. at 291 (concluding that 10% hypothetical costs of sale deduction was proper). Other courts have held that the amount of hypothetical costs of sale to be deducted should be equal to the costs a creditor would incur "in disposing of property in a commercially reasonable manner." *Claeys*, 81 B.R. at 992; *In re Davis*, 14 B.R. 226, 228 (Bankr.D.Me.1981).

While the Southern District of Ohio and other bankruptcy courts determined that hypothetical costs of sale should be deducted, "a growing number of courts have rejected this line of reasoning, and have re-

fused to deduct the sale costs in rendering a § 506 calculation unless the debtor's plan contemplates selling the property on the open market." *222 Liberty Assoc.*, 105 B.R. at 803. Courts which refuse to deduct hypothetical costs emphasize the second sentence of § 506(a), which dictates that "analysis should be made in light of the Debtor's intended use of the collateral." *In re Usry*, 106 B.R. 759, 761 (Bankr.M.D. Ga.1989).

The Bankruptcy Court for the District of Oregon set out an explanation of the view that hypothetical costs should not be deducted in the following discussion:

> If the [first sentence of § 506(a)] were interpreted to mean that the value must be fixed at the amount which the creditor would receive on foreclosure, then the last sentence of the statute which provides that the value shall be determined in the light of the purpose of the valuation and of the proposed disposition or use of the property, would be surplusage. Such an interpretation would mean that the value should always be fixed at the amount which the creditor would receive upon foreclosure regardless of the purpose of the valuation and of the proposed disposition or use of the property. The test would not depend upon whether the debtor intended to release the property or intended, instead to retain and use the property. It is not appropriate for the court to ignore or give no effect to the language of the last sentence of the statute.

*In re Courtright*, 57 B.R. 495, 497 (Bankr. D.Or.1986). The *Courtright* court concluded that when the debtor intends to retain and use the property, the court should not deduct hypothetical costs of sale in determining the valuation of the property. *Id.*

The Bankruptcy Court for the Northern District of Illinois agreed with the *Courtright* court in its holding in *Matter of Crockett*, 3 B.R. 365 (Bankr.N.D.Ill.1980). There, the court explained:

> Under a Chapter 13 plan the secured claim should be valued with due regard to the value of the property to the estate. "[T]he proposed disposition or use of

such property" (sec. 506(a)) in the instant case is for the debtors' retention and use. Therefore, the debtors cannot eat with the hounds and run with the hares. Seeking retention of the property, they cannot insist on liquidation values to be paid to the creditor in installments.

*Id.* at 367. At issue in *Crockett* was whether the court should use wholesale or retail value in determining the valuation of the secured property consisting of automobiles.

Several recent bankruptcy cases have agreed with the holdings in *Courtright* and *Crockett. See In re Gerhardt*, 88 B.R. 151, 15354 (Bankr.S.D.Ohio 1987) ("This Court is of the opinion that when the parties are not actually contemplating the sale of the property, then costs of sale is to be excluded from the valuation analysis."); *In re Usry*, 106 B.R. at 761–62 ("This court agrees with the analysis of the *Courtright* court" and holds that hypothetical costs should not be deducted.); *In re Bellman Farms, Inc.*, 86 B.R. 1016, 1019 (Bankr.D. S.D.1988) ("[I]f the debtor remains in possession of the collateral, these hypothetical costs should not be deducted from the value of the collateral.").

In this case, the district court determined that the hypothetical costs should not be deducted, basing its ruling in large part upon dicta in the recent Supreme Court decision in *United Savings Ass'n v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). *Timbers* required the Court to determine whether unsecured creditors are entitled to interest on their money under 11 U.S.C. § 362(d)(1) because of the delay in foreclosing on their collateral caused by the automatic bankruptcy stay. *Id.* at 368, 108 S.Ct. at 628. In order to make this determination, the Court had to interpret "interest in property" as found in § 362(d)(1). The Court looked at the "interest in property" phrase used in other contexts in the Bankruptcy Code for assistance. *Id.* at 371, 108 S.Ct. at 630. One of those other contexts was the use of the phrase in § 506(a). The Court wrote:

In subsection (a) of [506] the creditor's "interest in property" obviously means his security interest without taking account of his right to immediate possession of the collateral on default.... *The phrase "value of such creditor's interest" in § 506(a) means "the value of the collateral."*

*Id.* at 372, 108 S.Ct. at 630 (emphasis added). The Court concluded that "interest in property" under § 362(d)(1) did not include interest during the pendency of the automatic stay. *Id.*

■ The Bankruptcy Court in this case seized upon the above language from *Timbers* and determined that "the better view is that the secured creditor's interest may be valued for § 506(a) purposes without superimposing a foreclosure or other sale of the collateral where a disposition of the property is not reasonably in the offing." The Bankruptcy Court thus determined that the hypothetical costs of sale would not be deducted in this case. The District Court affirmed this determination. We agree with the result reached by the Bankruptcy Court and affirmed by the District Court.

If we were to accept the view that hypothetical costs should be deducted in this case, we would be reading the second sentence of § 506(a) out of the statute. "In construing a statute we are obliged to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979). The second sentence in § 506(a) requires that we determine the value "in light of the purpose of the valuation and of the proposed disposition or use of such property." 11 U.S.C. § 506(a).

In this case, the purpose of the valuation is to determine whether Balbus' unsecured debts are less than the $100,000 limit set out in 11 U.S.C. § 109(e). If they are, then Balbus properly filed a Chapter 13 claim. If not, then Chapter 13 was not available to Balbus. *See* 11 U.S.C. § 109(e).

The limitations set out in § 109(e) were reached as a result of a compromise between the Senate bill which had higher limits and the House bill which had lower limits. *In re Ballard*, 4 B.R. 271, 273 (Bankr.E.D.Va.1980). Congress compromised on dollar limitations between the Senate version and the House version. If hypothetical costs were deducted under § 506(a), then these limitations set out in § 109(e) could be manipulated according to the amount of hypothetical costs determined to be reasonable. This ability to manipulate the limits of § 109(e) on which Congress compromised runs contrary to the purpose of setting specific dollar limitations. That purpose was to "permit the small sole proprietor, for whom a chapter 11 reorganization is too cumbersome a procedure, to proceed under chapter 13." H.R.Rep. No. 595, 95th Cong., 1st Sess. 320 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6277. The purpose of the valuation in this case is to determine whether Balbus met the § 109(e) requirements, and this weighs in favor of consistent interpretation of the dollar limitations of § 109(e). Therefore, the purpose of valuation supports the view that hypothetical costs should not be deducted from the value of the property.

In addition to looking at the purpose of the valuation, the second sentence of § 506(a) directs us to look at the "proposed disposition or use of" the property at issue. 11 U.S.C. § 506(a). Indeed, the Senate Report underscores that requirement. *See* S.Rep. No. 989, 95th Cong., 1st Sess. 68, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5854. Here, the proposed use or disposition of the real property is that Balbus plans to continue to live in his house and not sell it. Courts which have focused on the intended use of the property have generally held that when a debtor retains the property, hypothetical costs should not be deducted. *See Courtright*, 57 B.R. at 497; *222 Liberty Assoc.*, 105 B.R. at 803; *Usry*, 106 B.R. at 761. Those courts which hold that hypothetical costs should be deducted generally do so by focusing on the first sentence of § 506(a), virtually ignoring the debtor's proposed disposition of the collateral and the requirements of the second sentence of § 506(a).

The proposed disposition of the property in this case is that Balbus will not sell his house. Therefore, this factor indicates that there is no need to subtract the hypothetical costs of sale as they are just that—hypothetical.

### III

The second sentence of 11 U.S.C. § 506(a) requires that we determine the value of a creditor's interest "in light of the purpose of the valuation and of the proposed disposition or use of such property." We find that we cannot ignore the direction of that sentence and thus cannot follow those courts which have chosen to focus on the first sentence of § 506(a). In this case, the purpose of valuation, to determine whether the dollar limits of 11 U.S.C. § 109(e) have been exceeded, counsels that hypothetical costs should not be deducted. Balbus intends to continue living in his house, so the proposed disposition of the property also counsels that hypothetical costs should not be deducted. Finally, the dicta in *Timbers* indicates that the proper interpretation of valuation in § 506(a) is the value of the collateral, not the value of the collateral minus the hypothetical costs of sale. *See Timbers*, 484 U.S. at 372, 108 S.Ct. at 630. Each of these factors supports the view that the district court properly refused to deduct hypothetical costs of sale from the value of Balbus' property. Therefore, we hold that the district court's ruling was not in error, and we affirm.

AFFIRMED.

MURNAGHAN, Circuit Judge, dissenting:

Brown & Co. has asserted that, for purposes of 11 U.S.C. § 506(a), the fair market value of the debtor's real property should be reduced, in all cases, by an amount equal to the hypothetical costs of sale of the property. The majority's quarrel with the proposition so stated is that the reduction should take place only if the debtor intends to dispose of the property. That quarrel pits authorities favoring a general rule of the deduction in all cases against what my brothers characterize as a "growing number" of jurisdictions endorsing the disposition distinction and disallowing the deduction when the debtor intends to retain the property.

As the majority indicates, the split in authorities tends generally to follow a perceived tension between the first and second sentences of section 506(a). In arguing in favor of what may, up to now, be called the general rule, Brown & Co. begins by focusing on the language of the first sentence— "the value of [the] *creditor's* interest in the estate's interest in [the] property"—in asserting that because the purpose of the valuation is to determine the amount of security that exists for the benefit of secured creditors, that interest cannot logically exceed the amount a creditor would realize if he attempted to liquidate the creditor's interest. In other words, the gross value, the undiminished fair market value of the real property, does not represent the net value, the dollar amount which would be available to a secured creditor were he ever to look to the property for satisfaction of his claim. As one court held, "The distinction to be drawn is between the value of the property and the value of the creditor's interest in such property.... This latter value properly takes into account costs of sale and justifies a 10% factor in determining the cash amount realizable by a lien creditor in real estate." *In Re Ward*, 13 B.R. 710, 712 (Bankr.S.D.Ohio 1981).

Brown & Co.'s position in supported by an impressive array of authority from bankruptcy courts, district courts, one bankruptcy appellate panel, and commentators. *See In re Malody*, 102 B.R. 745 (9th Cir.B.A.P.1989); *In re Smith*, 92 B.R. 287 (Bankr.S.D.Ohio 1988); *In re Claeys*, 81 B.R. 985 (Bankr.D.N.D.1987); *In re Richardson*, 82 B.R. 872 (Bankr.S.D.Ohio 1987); *In re Cook*, 38 B.R. 870 (Bankr.D.Utah 1984); *In re Parr*, 30 B.R. 276 (Bankr.N.D.Ala.1983); *In re Van Nort*, 9 B.R. 218 (Bankr.E.D.Mich.1981); *In re Klein*, 10 B.R. 657 (Bankr.E.D.N.Y.1981); *In re Jones*, 5 B.R. 736 (Bankr.E.D.Va.1980); *see also* J. Queenan, *Standards for Valuation of Security Interests in Chapter 11*, 92

Com.L.J. 18, 29–33 (1987); *see generally* Fortang and Mayer, *Valuation in Bankruptcy*, 32 U.C.L.A. L.Rev. 1061 (1985).

All of those authorities stand for the proposition that the value to which a secured creditor may look to satisfy the obligation owed by the debtor is independent of the intentions of the debtor regarding disposition (sale or retention) of the property. If the debtor intends to retain the property yet the creditor decides to look to the property to satisfy the debt, namely, the "creditor's interest," the creditor will foreclose and will receive (in a perfect market) the fair market value of the property *less* the costs of foreclosure.

The majority disagrees, suggesting that if the debtor intends to retain the property, the hypothetical costs of sale are exactly that—hypothetical. The majority then asserts that section 506(a)'s reference to the "creditor's interest" takes on an entirely different meaning if we focus our attention upon the second sentence of the section, which reads, "Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." The majority then goes on to assert that the jurisdictions comprising the "developing majority" have looked to that language in ruling that the hypothetical costs of sale will not be deducted from the value of the collateral where the debtor intends to retain the property. *See In re Usry,* 106 B.R. 759 (Bankr.M.D.Ga.1989); *In re Penz,* 102 B.R. 826 (Bankr.E.D.Ok.1989); *In re Bellman Farms,* 86 B.R. 1016 (Bankr.D.S. D.1988); *In re Gerhardt,* 88 B.R. 151 (Bankr.S.D.Ohio 1987); *In re Crouch,* 80 B.R. 364 (Bankr.W.D.Va.1987); *In re Robinson Ranch, Inc.,* 75 B.R. 606 (Bankr.D. Mont.1987); *In re Fiberglass Industries, Inc.,* 74 B.R. 738 (Bankr.N.D.N.Y.1987); *In re Courtright,* 57 B.R. 495 (Bankr.D.Ore. 1986); *In re Crockett,* 3 B.R. 365 (Bankr.N. D.Ill.1980).

Yet a thorough review of all of the cases cited by the majority in support of its position leads me only to conclude that the "emerging majority" of authorities is neither, on one hand, emerging nor, on the other, a majority.

Four of the cases cited by the majority value the collateral at its fair market value and decline to deduct hypothetical closing costs *only* when the debtor intends to retain the property *and* the property is a "going concern" or will be used to produce income essential to the reorganization plan. *Usry,* 106 B.R. at 762; *Fiberglass Industries,* 74 B.R. at 742; *Robinson Ranch,* 75 B.R. at 608; *Crockett,* 3 B.R. at 367. Because there is no evidence in the record suggesting that Balbus intends to produce income from the property, those cases are inapposite, yet the majority has not addressed the distinction.

*Bellman Farms* and *Crouch* engage in no analysis of the question, merely citing to cases in other jurisdictions. The discussion of valuation in *Gerhardt* is nothing more than *dictum;* the court cites not a single case or other authority in reaching its conclusion, a conclusion which is also a minority position in the Southern District of Ohio. *Courtright* makes a feeble attempt at discussing the tension between the first and second sentences of section 506(a) by stating,

> [the language in section 506(a) which reads "to the extent of the value of such creditor's interest in the estate's interest in such property"] appears to care for the problem where the estate's interest is less than full ownership such as where the debtors' [sic] own only an undivided interest in the property. If the [language] were interpreted to mean that the value must be fixed at the amount which the creditor would receive on foreclosure, then the last sentence of the statute which provides that the value shall be determined in the light of the purpose of the valuation and of the proposed disposition or use of the property, would be mere surplusage.

57 B.R. at 497.

One may conclude from the line of cases in the "emerging majority" cited by my brothers that the courts involved construed section 506(a) by placing their emphasis on

the value of the property to the *debtor* and thus on the "disposition and use" language found in the section's second sentence. *See In re 222 Liberty Assocs.*, 105 B.R. 798, 803 (Bankr.E.D.Pa.1989) (*citing Smith* and *Claeys* as "[t]he most fully-reasoned of the cases in which calculations including deductions of the respective hypothetical sales costs is made," but holding that "the debtor's intention is the cornerstone of the calculation as reflected in both sentences of § 506(a)"). Of course, the argument can be made that such inordinate focus on the statute's second sentence simply renders the first sentence "mere surplusage," and moves us no closer to divining Congress' intent. (Likewise, attention to the first sentence with equal force could be said to render the second sentence "mere surplusage.")

In addition, a review of the cases which Brown & Co. cites in support of its position demonstrates that there is a fatal flaw in the underlying premise of the majority's reading of the second sentence of section 506(a): the majority assumes that the purpose of the valuation to be performed under the section is to measure the value of the collateral to the debtor. That premise is simply not correct. The second sentence commences with the words "Such value," inevitably a reference back to the "creditor's interest." The sentence concludes with a requirement that attention should be paid to "such creditor's interest."

The better view, then, one consistent with the words "such value," may be found in *Claeys, Smith,* and *Malody.* After considering the reasoning relied upon by the majority in *Courtright, Crockett,* and *In re Frost,* 47 B.R. 961 (D.Kan.1985), the court in *Claeys* stated,

> The fact that a debtor intends to retain the collateral does not emasculate the fact that it is in the first instance the creditor's interest in the collateral that must be valued.

> . . . .

One commentator has suggested that any other construction is meaningless because regardless of the circumstance of bankruptcy or the eventual circumstances of repossession, a secured creditor, in order to obtain its value in collateral, will have to sell it and incur expenses in so doing. No creditor, and indeed not even the debtor itself could obtain full market value without some reduction for sale expenses.

81 B.R. at 991–92 (*citing* J. Queenan, *Standards for Valuation of Security Interests in Chapter 11,* 92 Com.L.J. 18, 29–37 (1987)). The *Claeys* court then went on to provide a compelling construction of the second sentence of section 506(a), compelling because it goes far beyond any of the cases cited by the majority in demonstrating that meaning can be given to the whole of the section without having to focus on either of its parts at the expense of the other:

> The emphasis to be placed upon the concept of "use" or "disposition" of property should not be placed in the context of collateral retention by the debtor via a reorganization plan, but rather ought to focus on a use or disposition of collateral that is either destructive or unanticipated in the sense that it would increase the risk of loss to the creditors' interest in the collateral. Illustrative of such use in a Chapter 12 treatment context might be a post-confirmation proposal to use a combine for custom work where previously it had been used seasonally to harvest the debtor's own crop.

*Id.* at 992. *See also Smith,* 92 B.R. at 290–91 ("[B]ecause it is the *creditor's interest* in the estate's interest in property which must be valued, it is appropriate to deduct costs of sale regardless of whether a debtor intends to retain and use the property under a plan of reorganization"). *Claeys* provides full meaning to the second sentence of section 506(a) consistent with the first sentence's (and the whole section's) emphasis on the "creditor's interest," disposing of the majority's claim that emphasis on the creditor's interest "reads the second sentence of § 506(a) out of the statute." *In re Balbus,* at 251.

Equally compelling is the reasoning to be found in *In re Malody,* a case decided by

the Ninth Circuit's Bankruptcy Appellate Panel.[3] *Malody* concerned valuation under section 506(a) in the context of whether the "cram-down" provisions of 11 U.S.C. § 1325(a)(5)(B) were satisfied for Chapter 13 reorganization. The issue before the court was whether the value to be given to the collateral—an automobile—should be the wholesale value or the proceeds of a commercially reasonable sale. There it was the creditor, seeking to maximize its interest in the collateral, who argued that the second sentence of section 506(a) had to be interpreted as mandating valuation based upon the collateral's intended retention and use by the debtor.

The *Malody* panel rejected the argument, citing three lines of reasoning for holding that the commercially reasonable costs of sale had to enter into the valuation calculus:

1. the purpose of valuation is to protect a secured claimant from loss by assuring that it will receive as much money under the plan as it would receive if it were permitted to sell the vehicles in a commercially reasonable manner;

2. replacement value is the proper means of valuing the collateral when the collateral is essential to the effectuation of the debtor's reorganization plan; and

3. replacement value ignores the inherent risk a lender undertakes when it makes the loan; namely, that if the debtor defaults the lender might have to repossess the collateral and sell it at a value most likely less than its retail value.

102 B.R. at 749. In my view, the clear weight of authority supports a ruling, in light of the instant facts, that hypothetical costs of sale must be included in calculating the extent to which the claims on the real property in question are secured.

Yet my task is not quite complete. In adopting the emerging view, the majority relies on *dictum* found in the Supreme Court's decision in *United Savings Ass'n*

*of Texas v. Timbers of Inwood Forest Associates. Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). As noted in *Liberty Assocs.,*

> the *Balbus* case [104 B.R. 767 (Bankr.E. D.Va.1989)], taking another tack, relies heavily on dictum in [*Timbers*]. There, in harmonizing the phrase "value of such entity's interest" in 11 U.S.C. § 361(1) with similar phrases elsewhere in the Code, the Court observed that "[t]he phrase 'value of such creditor's interest' in § 506(a) means 'the value of the collateral,'" without allowances for the creditor's "lost opportunity costs."

105 B.R. at 803. I find the majority's reliance on that *dictum* problematic. The holding in *Timbers* is that, for purposes of adequate protection, an undersecured creditor is not entitled to post-petition interest on its collateral while the automatic stay is in effect. As the court below acknowledged, *Timbers* did not focus on the issue of whether hypothetical costs of sale should be taken into account in a valuation of collateral. Here, of course, at issue is Brown & Co.'s secured interest and not its entitlement to post-petition interest. The issue *Timbers* leaves unanswered is how to make an initial determination of the value of a secured creditor's interest, precisely the issue on appeal here.

I agree with Brown & Co.'s assertion that the bankruptcy court below read out of context the sentence in *Timbers* that appears to equate "value of such creditor's interest" with "value of the collateral." In fact, if read literally, the statement is demonstrably false because the creditor's interest must, at a minimum, equal the value of the collateral *less* any liens placed upon it. A far more reasonable interpretation of the *Timbers dictum,* given the holding, is that "the value of such creditor's interest" in collateral cannot exceed the "value of the collateral" and therefore cannot include the creditor's lost opportunity to take possession of the property. In any event, the *Timbers dictum* fails to figure into the

---

**3.** In the Ninth Circuit, an appeal from a decision of a bankruptcy court may be taken to a district court or to the bankruptcy appellate panel. The panel consists of three Article I judges who sit by designation. Appeals from a decision of the bankruptcy appellate panel are taken to the Ninth Circuit Court of Appeals.

question whether or not the debtor intends to retain the collateral.

We should adopt the "general rule" so cogently articulated in *Claeys.* Because the majority has chosen to do otherwise, I respectfully dissent.