In re George W. COLSON, Sr. and Barbara M. Colson.

George W. COLSON, Sr., et al., Appellants,

v.

William T. BUELLIS, Appellee,

Mark J. Friedman, Trustee.

No. 95–5–5120ESD, Civ.A. No. WMN–97–2162.

United States District Court, D. Maryland, Southern Division.

Oct. 15, 1997.

F. Thomas Rafferty, Blum, Yumkas, et al, Baltimore, MD, for appellant.

William T. Buellis, pro se.

Mark J. Friedman, U.S. Trustee Baltimore, MD, pro se.

*MEMORANDUM*

NICKERSON, District Judge.

Currently pending is an appeal of an order of the Bankruptcy Court. Upon a review of the record and the applicable case law, the Court determines that no hearing is necessary (Bankruptcy Rule 8012) and that the decision of the Bankruptcy Court should be affirmed.

This appeal concerns the valuation of the residence of the Debtors George Colson, Sr. and Barbara Colson ["the Property"]. The Debtors filed a Chapter 7 bankruptcy case on July 17, 1995. Prior to the filing of the bankruptcy, William Buellis obtained a judgment against the Debtors in state court for approximately $27,000, plus interest and attorneys fees. On that basis, Buellis claimed a judicial lien on the Property. Buellis's lien, however, was junior to two other liens on the Property: a first mortgage in the amount of approximately $103,112 as of the date of the bankruptcy, and a second judgment lien having a balance of approximately $6,870 as of that same date.

On January 31, 1996, Buellis filed a Motion for Modification of the Automatic Stay. On March 4, 1996, the Debtors filed a Motion to Avoid Buellis's Judicial Lien on Exempt Property. On March 28, 1997, Bankruptcy Judge E. Stephen Derby held a hearing on the motions, which centered on the valuation of the Property. The Debtors took the position that the value of the Property was no more than $100,000. Thus, the Debtors argued, they had no equity in the Property that would be subject to Buellis's lien.

Judge Derby ultimately concluded that the Property had a fair market value of $134,000. Based on that valuation, Judge Derby entered one Order modifying the bankruptcy stay and another order granting, in part, Debtors' motion to avoid Buellis's judicial lien. Each order contained a finding that $19,026.27 of Buellis' judgment was not avoidable by the Debtors. After Judge Derby denied the Debtors' motion to reconsider his decision, the Debtors filed the instant appeal.

At the hearing before Judge Derby, and in this appeal, the Debtors relied on the ap-

praisal of Walter A. Reiter, Jr., a certified general appraiser. Based on sales of comparable homes in the vicinity, Reiter testified that the Property would have a fair market value of approximately $150,000 once certain repairs were made. Reiter then deducted from that amount the estimated costs of the repairs that he believed were needed to be made in order to render the house marketable. These include: $2,500 for repairs to the septic system; $2,500 for repairs to the roof; $3,000 for jacking, and $13,300 for structural repairs to correct the "sinking or sagging" of portions of the first floor of the residence.

Reiter also concluded that the structural problems relating to the sagging floor were so severe that an ordinary purchaser would not be interested in the home. Based on the assumption that the home could only be sold to an investor, Reiter further deducted from the estimated value of the property an additional $35,000. This $35,000 included: "$20,-000 which is for the risk and the speculation of what contingencies that [an investor] might not know about, and then an entrepreneurial reward which is why [the investor would purchase this house,]" Hearing Tr. at 22; sales and brokerage fees of $12,000; and "contingency" costs totaling $3,000 related to additional problems that might be discovered once the house was jacked up. Thus, Reiter's estimated value for the Property was $94,700.

The Bankruptcy Court rejected this estimate. Based on an estimate from a local contractor who indicated that he would repair the structural problems for $10,639, and rounding that figure to $11,000 to include permit costs and other incidental adjustments, the Bankruptcy Court deducted that figure as a fair estimate of the diminution of value related to the structural problems in the residence. The Bankruptcy Court also allowed the $5,000 deduction for the repairs to the roof and septic system, finding those estimates reasonable. The Court did not allow, however, the additional $35,000 in deductions which the Debtors argued were necessitated by the structural problems: the sales and brokerage costs, the "risk" or "entrepreneurial" costs, and the "contingency costs".

■ Factual findings of the Bankruptcy Court are reviewed under a clearly erroneous standard. *Lubrizol Enterprises v. Richmond Metal Finishers,* 756 F.2d 1043 (4th Cir.1985), *cert. denied,* 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986). Conclusions of law are reviewed *de novo. Caswell v. Lang,* 757 F.2d 608 (4th Cir.1985). In this instance, the valuation of the Property is a mixed question of law and fact. The decision whether to allow for sales and brokerage, contingency, and risk costs is a question of law. The determination of a fair estimate for diminution of value based on the cost of repairs is a question of fact. Applying the relevant standards, this Court finds no error in the Bankruptcy Court's conclusion.

■ As to the sales, risk, and contingency costs, the Fourth Circuit has held that these costs are not to be considered in determining fair market value of a residence. *See In re Balbus,* 933 F.2d 246 (4th Cir.1991); *In re Coker,* 973 F.2d 258, 260 (4th Cir.1992). As to the cost of repairs, the Bankruptcy Court's estimates seem reasonable in light the evidence in the record.

The Debtor's own expert estimated that the value of the house, if repaired, would be $150,000. Judge Derby reached a conclusion which this Court finds to be reasonable that the repairs that would need to be made in order to be able to sell the house for that amount would cost approximately $16,000. The Debtors, however, would reduce the fair market value of the house by more than $55,000 because of the $16,000 in repairs that are needed in order to put the house in saleable condition. Like Judge Derby, this Court concludes that this argument makes "absolutely no logical sense whatsoever." Tr. at 60.

For the reasons stated, the decision of the Bankruptcy Court will be affirmed.