130 F.3d 863
 31 Bankr.Ct.Dec. 1270, Bankr. L. Rep. P 77,577,
97 Cal. Daily Op. Serv. 9182,
97 Daily Journal D.A.R. 14,831,
2 Cal. Bankr. Ct. Rep. 32
 In re: Peter KIM, aka Peter H. Kim; Un C. Kim, aka Esther
U. Kim, Debtors.
ARDMOR VENDING CO., dba Great Northern and Ardmor Co. Profit
Sharing Plan, Appellants,
v.
Peter KIM, aka Peter H. Kim; Un C. Kim, aka Esther U. Kim, Appellees.
 No. 97-55298.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 9, 1997.
Decided Dec. 9, 1997.
 
 Myles M. Mattenson, Los Angeles, CA, for appellants.
 A. Edward Briseno, Los Angeles, CA, for appellees.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel Meyers, D.E. Russell and Volinn, Bankruptcy Judges, Presiding. BAP No. CC-96-1017-MeRuV.
 Before: REINHARDt and TASHIMA, Circuit Judges, and FITZGERALD, District Judge.*
 TASHIMA, Circuit Judge.
 
 
 1
 Debtors Peter and Un C. Kim filed a Chapter 13 bankruptcy plan treating appellant Ardmor Vending Co. dba Great Northern ("Great Northern") as partially secured and Ardmor Co. Profit Sharing Plan ("Ardmor PSP") (together "appellants") as wholly unsecured. Appellants objected to the plan on the basis that the Kims had undervalued the collateral securing their claims, and the Kims then objected to appellants' claims. The bankruptcy court sustained the Kims' objections and confirmed the plan. Appellants appeal from the Bankruptcy Appellate Panel's (BAP) affirmance of the bankruptcy court. At issue is the method of valuation of appellants' collateral, given their security interests in both the equipment and the lease of the Kims' dry cleaning business. We have jurisdiction pursuant to 28 U.S.C. § 158(d), and we reverse.
 
 I. BACKGROUND
 
 2
 The Kims, operators of a dry cleaning business, filed a voluntary petition under Chapter 13 of the Bankruptcy Code. At the time of filing, the Kims owed Great Northern approximately $98,000, secured by the dry cleaning equipment and the lease of the business premises. In addition, they owed Ardmor PSP approximately $10,000, secured by the equipment.
 
 
 3
 The Kims' first Chapter 13 plan treated Great Northern as secured in the amount of $34,000 and unsecured in the amount of $65,595, and Ardmor PSP as completely unsecured. These figures were based on the Kims' estimate on their Schedules that the equipment was worth $34,000. The Schedules failed to disclose Great Northern's security interest in the lease. Under the plan, the Kims would assume the lease and continue to operate the business.
 
 
 4
 Appellants filed objections to the plan, contending that they were fully secured and that the Kims had failed to take into account Great Northern's security interest in their lease. The Kims objected to appellants' claim, submitting the declaration of a real estate appraiser who stated that the lease was worthless because it provided for above-market rent.
 
 
 5
 During the hearings, appellants argued that the Kims had undervalued the collateral by valuing the equipment and the lease separately, rather than as a so-called "turn-key" package. The bankruptcy court rejected this argument, stressing that appellants' security interests in the lease and the equipment were substantially less than a security interest in the entire business. The court thus accepted the Kims' "off location" value of the equipment, that is, its value "on the street, not income producing," rather than "on location," as part of an income-producing going concern. Appellants sought to introduce evidence of comparable sales of dry cleaning establishments in support of their assertion that the equipment is more valuable on location, when they hold a security interest in both the lease and equipment, rather than off location. However, the court excluded the evidence because of the failure to include exact locations, dates, and names. It then ruled that the lease had no value and confirmed the final plan, which treated appellants in essentially the same way as the first plan had. The BAP affirmed the bankruptcy court, with one judge dissenting. Ardmor Vending Co. v. Kim (In re Kim), 205 B.R. 238 (9th Cir. BAP 1997) ("Kim I ").
 
 II. STANDARD OF REVIEW
 
 6
 Decisions of the BAP are reviewed de novo. Steelcase Inc. v. Johnston (In re Johnston), 21 F.3d 323, 326 (9th Cir.1994). We independently review the bankruptcy court's rulings. Havelock v. Taxel (In re Pace), 67 F.3d 187, 191 (9th Cir.1995). The bankruptcy court's conclusions of law are reviewed de novo and its factual findings for clear error. Id. The trial court's evidentiary rulings are reviewed for an abuse of discretion. Fireman's Fund Ins. Cos. v. Alaskan Pride Partnership, 106 F.3d 1465, 1467 (9th Cir.1997).
 
 III. DISCUSSION
 A. Valuation of Collateral
 
 7
 Section 506 of the Bankruptcy Code provides that the value of a secured creditor's interest "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property." 11 U.S.C. § 506(a). In Taffi v. United States (In re Taffi), 96 F.3d 1190 (9th Cir.1996) (en banc), cert. denied, 521 U.S. 1103, 117 S.Ct. 2478, 138 L.Ed.2d 987 (1997), we addressed the primary question in this case-valuation of collateral under § 506(a) when the debtor intends to retain the property. We stated that "[v]aluation must be accomplished within the actual situation presented." Id. at 1192. Thus, when the debtor retains property subject to a lien, the proper valuation is fair market value, not foreclosure value. Id. Accord Winthrop Old Farm Nurseries, Inc. v. New Bedford Inst. for Sav. (In re Winthrop Old Farm Nurseries, Inc.), 50 F.3d 72, 75 (1st Cir.1995) ("a court remains faithful to the dictates of § 506(a) by valuing the creditor's interest in the collateral in light of the proposed post-bankruptcy reality"); In re Penz, 102 B.R. 826, 828 (Bankr.E.D.Okla.1989) (noting that a debtor's continued use of collateral implies that the value of the collateral is greater than if liquidated; thus, "creditor's secured claim is entitled to be valued to the extent of its contribution to the entire estate vis-a-vis 'going concern value' not a mere liquidation value.").
 
 
 8
 In light of Taffi, the bankruptcy court erred in accepting the off location valuation of the equipment, which does not take into account the actual use of the property. The Kims are continuing to operate the business, not removing the equipment and selling it. Consequently, the valuation should have been based on the equipment's worth on location, not off location, taking into account the fact that appellants hold security interests in both the equipment and the lease. The Kims argue that their valuation is consistent with Taffi because it is the fair market value, not forced sale value, of the equipment. However, this argument ignores Taffi 's reasoning that the valuation is to depend on the use or disposition to be made of the interest, which in this case means the continued operation of the business in the same location.
 
 
 9
 The bankruptcy court's valuation was based on its finding that appellants' security interest did not amount to a turn-key operation; thus, appellants did not have the right to sell the lease plus equipment as a package. This finding was clearly erroneous, causing the court to undervalue appellants' collateral by failing to consider appellants' evidence of the value of the collateral as a package.
 
 
 10
 The court believed that security interests in the lease and equipment were "substantially short of a security interest in the business," stating that "the income-producing potential seems to belong to the Debtor. The Debtor could go next door and make full use of it and [appellants] would be stuck with nothing but a lease and the equipment." But this supposedly undesirable situation is exactly what appellants bargained for and were requesting-to eject the debtors, be "stuck with" the lease and the equipment and be able to sell those as a package in order to be made whole. In appellants' view, the value of the business is in the lease and equipment.[1]
 
 
 11
 As the BAP dissent noted: "What more could Great Northern possibly need to obtain a turn-key operation?" Kim I, 205 B.R. at 247 (Russell, J., dissenting). If the Kims were to "go next door" without the equipment and lease and attempt to start another dry cleaning business, they would incur the heavy expense of buying and installing new equipment in a new location. Appellants, on the other hand, could sell the equipment and lease as a package to "an entrepreneur willing to add labor. Neither the court nor the Debtors (nor the majority) points to a single additional piece of collateral Great Northern might need before it could sell the site as such." Id. (Russell, J., dissenting).
 
 
 12
 Holding both the lease and equipment gave appellants a package that was worth more than if the two were valued separately. Selling the equipment alone (as an off location valuation implies), and then selling the lease, as vacant premises with no improvements and no equipment, is impractical and would not maximize the value of the collateral.[2] This is why Irving D. Weiner, Chief Executive Officer of Great Northern, stated that in his many years of building, equipping, and selling laundromats and dry cleaners, his company routinely took security interests in both the equipment it sold and the lease where the equipment was installed-so that in the event of default, his company can sell them as a package.
 
 
 13
 The bankruptcy court therefore erred in valuing the equipment and lease separately. Accepting the off location value of the equipment, and then estimating the value of a vacant, unimproved location with no equipment on-site and above-market rent, caused the court to undervalue appellants' collateral.
 
 B. Evidentiary Rulings
 
 14
 Appellants also appeal from several evidentiary rulings of the bankruptcy court excluding evidence they proffered in support of their objections to the Kims' plan. Most of this evidence was offered in an effort to convince the court that the equipment was more valuable on location than off location. Our ruling on the proper method of valuation of collateral under § 506(a), however, has mooted these issues. This evidence is no longer needed. Due to its incorrect approach to valuation, the court gave no consideration to the most relevant valuation evidence before it:[3] the valuation of the collateral together, on site, by Weiner and Robin D. Rix, a real estate agent who specializes in the sale of dry cleaning businesses and who had previously listed the Kims' business. Rix estimated the value of the Kims' business to be $165,000. The only other evidence of value was the Kims' off location value of $34,000. Thus, the bankruptcy court did not consider any evidence of value under the correct method of valuation. The Kims have offered no evidence of the value of the equipment on location and appellants' evidence was rejected. We therefore must remand to the bankruptcy court for a finding of the value of the collateral as a turn-key package, based on a proper evidentiary foundation.IV. CONCLUSION
 
 
 15
 The bankruptcy court erred in determining the value of the equipment on an off location basis, rather than an on location basis. On remand, it should redetermine the value of the equipment and the lease as a turn-key package.
 
 
 16
 REVERSED and REMANDED.
 
 
 
 *
 The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 [1]
 As appellants counsel argued to the bankruptcy court, "if we had the lease and the equipment, it would be terrific, because that in effect is a location-and it's a saleable location with income-producing possibilities...."
 
 
 [2]
 As appellants argue, outside the bankruptcy context, disposition of the equipment off location, separate from the lease, would not satisfy the requirement of a commercially reasonable sale. See Cal. Comm.Code § 9504
 
 
 [3]
 Most of the portions of the Weiner declaration which were excluded related to off location valuation, although there is some indication that his opinions in their entirety were excluded. However, exclusion of the on location valuation appears to rest primarily on the bankruptcy court's erroneous view of relevancy, which was based on the premise that the collateral should not be valued as a turn-key package. Likewise, there was no express rejection of the Rix declaration, but, obviously, the court gave it no weight. Presumably, this too was based on its mistaken view of relevancy. While we do not pass on the admissibility of any particular evidence in the form presented to the bankruptcy court, we are confident that, on remand, that court will afford both parties an opportunity to adduce appropriate evidence in light of the test we have set forth and will give opinions of on-location, turn-key valuation their proper weight