2 F.3d 1151
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re PIONEER INVESTMENT SERVICES CO., Debtor.
CIRCUIT CITY STORES, INC., Plaintiff-Appellant,
v.
PIONEER INVESTMENT SERVICES CO., Defendant-Appellee.
 No. 92-5566.
 United States Court of Appeals, Sixth Circuit.
 Aug. 13, 1993.
 
 Before: JONES and NELSON, Circuit Judges; and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-Appellant Circuit City Stores, Inc. ("Circuit City") appeals the district court's Order affirming the Order on Motion for Valuation of the bankruptcy court. We affirm in part, vacate in part, and remand for clarification of part of the bankruptcy court's decision.
 
 
 2
 * Circuit City operated a retail electronics store at 7807 Kingston Pike, Knoxville, Tennessee ("Old Store Property"). It had financed the property with industrial revenue bonds carrying an interest rate of approximately 6.7%. Pioneer Investment Services Co. ("Pioneer") purchased the Old Store Property from Circuit City and assumed the outstanding mortgage obligation to First American National Bank ("Bank") in the amount of $2,108,333.35. Legal title to the Old Store Property became vested in Pioneer. Circuit City moved from the Old Store Property to the Town & Country Shopping Center (the "New Store Property"), developed by Pioneer, the lessor.
 
 
 3
 Subsequent to this transaction between Pioneer and Circuit City, Pioneer defaulted on its Old Store Property mortgage payments. Apparently, in order for the favorable bond interest rate to remain available to Pioneer, Circuit City had to agree to remain liable on the mortgage. Thus, when Pioneer defaulted, Circuit City began making the quarterly mortgage payments to the Bank in October 1988. To recoup its losses, Circuit City withheld its rent payments to Pioneer starting in December 1988. Pioneer then commenced an adversary proceeding against Circuit City for the unpaid rent.
 
 
 4
 On April 12, 1989, Pioneer filed a petition for relief under Chapter Eleven of the Bankruptcy Code. Article V of Pioneer's proposed reorganization plan ("Plan") included the following provision:
 
 
 5
 For the purpose of the [P]lan, Pioneer shall assume that Circuit City will be successful in the adversary proceeding and will have a claim of approximately $2,300,000. In this event, Pioneer shall abandon the [Old Store Property] to Circuit City, which Circuit City claims has a fair market value of approximately $2,100,000, thus reducing the claim of Circuit City to approximately $200,000. Further, Circuit City has withheld in excess of $200,000 in rent, which reduces its claim and entitle[s] Pioneer to recover the excess. To the extent the building's value is less than $2,100,000, the difference will be paid by allowing Circuit City, with Court approval[,] to continue to set off base rent payments until paid in full.
 
 
 6
 See J.A. at 131. Pioneer's assumption proved correct. The bankruptcy court ruled in Circuit City's favor in the adversary proceeding and the district court upheld the bankruptcy court's ruling.
 
 
 7
 On June 1, 1990, Circuit City filed its Objection to Confirmation of Pioneer's Plan. Paragraph Two of this Objection to Confirmation apparently read: "Circuit City objects to the proposed treatment of this claim ... only to the extent that the Plan attempts to affix a specified value on the building which is the subject matter of Circuit City's suit." See id. at 10. The Objection to Confirmation apparently concluded: "WHEREFORE, Circuit City prays that this Honorable Court deny confirmation if this Court interprets the proposed Chapter 11 Plan as affixing a specified value on the building in question without a valuation hearing under 11 U.S.C. [Sec.] 506(b)." See id.
 
 
 8
 Subsequently, Mr. John Hicks, counsel for Pioneer, and Mr. Robert Hill, counsel for Circuit City, had several discussions about Circuit City's objections to the Plan. The parties apparently reached an agreement, memorialized in a letter dated July 31, 1990 from Mr. Hicks to Mr. Hill:
 
 
 9
 This is to confirm our conversation of yesterday in which we discussed Circuit City's Ballot in the Pioneer Chapter 11. This will confirm that the provisions of the Plan and Disclosure Statement are not intended to bind Circuit City to the valuation placed on the Old Circuit City Store in the Plan and Disclosure Statement. This will also confirm that Pioneer recognizes that, in the event we are unable to agree upon a value, a valuation by the Bankruptcy Court will be necessary to determine the total claim.
 
 
 10
 Appellate R. Vol. II, No. 6 (Exhibit 3).
 
 
 11
 Circuit City did not appear at the confirmation hearing relating to Pioneer's Plan. On October 17, 1990, the bankruptcy court confirmed the Plan. Circuit City did not appeal this confirmation.
 
 
 12
 Thereafter, the parties were unable to reach an agreement as to the value of the Old Store Property. Consequently, Pioneer filed a Motion for Valuation with the bankruptcy court on January 29, 1991. In its Memorandum in Support, it stated:
 
 
 13
 [T]he only open issue in this case is the value of the Old Store Property....
 
 
 14
 ... Pioneer is surrendering the property to Circuit City and foreclosure is not necessary. Circuit City can dispose of the Old [Store] Property by sale, and therefore, Pioneer submits that fair market value is the appropriate valuation to be used.
 
 
 15
 J.A. at 14-15.
 
 
 16
 In a related pleading, Circuit City mentioned that it "will take the property back and sell it in a commercially reasonable manner," id. at 22, but nonetheless disagreed with Pioneer's suggestion that fair market value should be the valuation standard applied:
 
 
 17
 If this Court feels that it should establish a value and since that valuation should be made in the context of granting Pioneer an immediate credit upon their claim, liquidation value should be applied as that value represents what value could be immediately obtained from the sale of this property. If Pioneer wants an immediate credit based upon appraisal testimony, give us a valuation which will allow us to achieve that valuation, and thus, credit immediately. The use of any previous market value appraisal is really useless in the context of this valuation hearing.
 
 
 18
 Id. at 31.
 
 
 19
 A valuation hearing was held by the bankruptcy court on April 8, 1991. At this hearing, Pioneer called Mr. Chris Hodges, a real estate appraiser, who testified that the fair market value of the Old Store Property was $1,700,000 with financing at market interest rates. He opined that the liquidation value of the Old Store Property would be approximately 20% less. He also acknowledged that the cost of selling the property would run between 5% and 10%.
 
 
 20
 Circuit City called Mr. Dennis Diehl, an employee of the Enterprise Appraisal Co., who had taken part in an appraisal of the Old Store Property in September 1990 on behalf of both Circuit City and Pioneer. This appraisal put the fair market value of the Old Store Property as of August 29, 1990, at $1,800,000. Mr. Diehl testified that an orderly liquidation would reduce this figure by between 10% and 30%, that a forced liquidation sale would result in a 20% to 40% reduction in the market price, and that the disposition cost would range between 8% and 10% of the value of the property at the time of sale.
 
 
 21
 The bankruptcy court accepted Hodges' $1,700,000 figure as the value to be placed on the Old Store Property. It stated:
 
 
 22
 It is my interpretation of the debtor's [P]lan, and I do not think it is really too much in dispute, that the [P]lan contemplates an abandonment or surrender of the property to Circuit City and an immediate valuation of the property and credit against the obligation the debtor has to Circuit City. With respect to the property value, I have before me the $1,800,000 appraisal of Enterprise Appraisal Co. That is a fair market value appraisal. Mr. Dennis Diehl, who helped participate in that appraisal, testified that the property would have a lesser value if orderly liquidated and even lesser value if there was a forced liquidation. He gave a range of values. However, he also testified that he had not conducted an appraisal through the orderly liquidation or forced liquidation context and the Court cannot speculate as to what the property would bring in one of those liquidation postures were it to deem that posture appropriate....
 
 
 23
 There was another appraiser from Knoxville, Chris Hodges, who appraised the property within the last several days. Mr. Hodges appraised the property at $2,000,000 with existing financing....
 
 
 24
 ... Mr. Hodges testified that if the property were to be sold at the market rate of interest, its fair market value would be $1,700,000. That is the value which I am going to place on this property in its present condition, that the fair market value is $1,700,000. The debtor, under the terms of the plan, is to abandon or surrender the property to Circuit City and the $1.7 million is to be credited against the debt.
 
 
 25
 Id. at 136-38. After this decision was announced from the bench, Mr. Hill, for Circuit City, asked, "Is Your Honor going to deduct from that valuation a cost of disposition?" Id. at 124. The bankruptcy court responded, "No. That's the value. I don't think that's an appropriate--that doesn't enter into the appraised value. That's a gross figure." Id. The bankruptcy court's Order on Motion for Valuation was entered on April 16, 1991. Circuit City appealed the Order to the United States District Court for the Eastern District of Tennessee on April 26, 1991.
 
 
 26
 On March 13, 1992, the district court heard argument and issued an Order affirming the decision of the bankruptcy court. It stated its reasons from the bench:
 
 
 27
 This leaves this court, sitting as an appellate court, with the two issues on appeal stated by Circuit City, whether the bankruptcy court erred in using a fair market measure of value with respect to this property, as opposed to a forced liquidation measure, and whether the bankruptcy court erred in not reducing the credit by an estimated amount of Circuit City's projected expenses in liquidating the Old Circuit City Property.
 
 
 28
 ....
 
 
 29
 The notes of the Senate Committee on the Judiciary attached to what became Section 506(a) of the Bankruptcy Court Code illustrate the great scope of the flexibility and discretion which Congress intended bankruptcy judges to exercise in deciding valuation questions.
 
 
 30
 These notes, read in part, "While courts will have to determine value on a case-by-case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property."
 
 
 31
 The pertinent provision of the Plan itself calls for a fair market valuation. Furthermore, fair market value seems particularly apt in this case, given the expectation that Circuit City, which owned this property once before, will seek to market it to a willing buyer and will not be under a compulsion to sell any greater than the compulsion which it would have experienced had it decided to move to its new premises without Pioneer's assumption of the debt secured by the Old Circuit City Property; a market or financial compulsion, not a legal one.
 
 
 32
 As for the issue of deduction for the projected costs of sale, there is no mention in the confirmed Plan of any such deduction. Furthermore, the bankruptcy court acted within its discretion in not taking such projected costs into account, particularly given that the court below found the fair market value of the property to be $100,000 less than the value pegged by the appraiser selected by both parties and given that the evidence presented concerning such costs, with respect to which Circuit City had the burden, was very sketchy.
 
 
 33
 Tr. of Hearing before Dist.Ct. at 26-28.
 
 
 34
 Circuit City appealed the Order of the district court on April 10, 1992.
 
 II
 
 35
 Circuit City maintains that the valuation of the Old Store Property, as a general matter, was not settled by Article V of the Plan. If the parties could not agree on a mutually satisfactory valuation, Circuit City asserts, they would seek judicial intervention. Pioneer contends that, under Article V of the Plan, Circuit City could only challenge the valuation of the fair market value of the Old Store Property; it could not challenge the method of valuing the Old Store Property.
 
 
 36
 The threshold issue raised by Pioneer is whether principles of res judicata preclude Circuit City from challenging the method used to value the Old Store Property. According to Pioneer, confirmation of the Plan precludes Circuit City from challenging the fair market value method of valuing the Old Store Property. The relevant provision of the Plan that Pioneer claims carries this preclusive effect, quoted above, reads:
 
 
 37
 For the purpose of the [P]lan, Pioneer shall assume that Circuit City will be successful in the adversary proceeding and will have a claim of approximately $2,300,000. In this event, Pioneer shall abandon the [Old Store Property] to Circuit City, which Circuit City claims has a fair market value of approximately $2,100,000, thus reducing the claim of Circuit City to approximately $200,000. Further, Circuit City has withheld in excess of $200,000 in rent, which reduces its claim and entitle[s] Pioneer to recover the excess. To the extent the building's value is less than $2,100,000, the difference will be paid by allowing Circuit City, with Court approval[,] to continue to set off base rent payments until paid in full.
 
 
 38
 See J.A. at 131.
 
 
 39
 It is true that an order confirming a plan of reorganization constitutes a final judgment in bankruptcy proceedings. Sanders Confectionery Products, Inc. v. Heller Fin., Inc., 973 F.2d 474, 480 (6th Cir.1992), cert. denied, 113 S.Ct. 1046 (1993); see also 11 U.S.C. Sec. 1141(a) (1988). A confirmation order bars "relitigation of any issues raised or that could have been raised in the confirmation proceedings." Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.), 930 F.2d 458, 463 (6th Cir.1991). We do not find, however, that the terms of the confirmed Plan necessarily bind Circuit City to a particular method of valuation. The Plan merely notes that Circuit City claims the fair market value to be $2,100,000. And it adds that, "[t]o the extent the building's value is less than $2,100,000, the difference will be paid by allowing Circuit City, with Court approval[,] to continue to set off base rent payments until paid in full." See J.A. at 131 (emphasis added). This indicates that the building's value in general was not to be considered set by the Plan. Indeed, before the Plan was confirmed, the parties agreed that the value of the Old Store Property was not to be deemed set by the Plan, as evidenced by Mr. Hicks' letter of July 31, 1990. The letter reads, in pertinent part:
 
 
 40
 This will confirm that the provisions of the Plan and Disclosure Statement are not intended to bind Circuit City to the valuation placed on the old Circuit City store in the Plan and Disclosure Statement. This will also confirm that Pioneer recognizes that, in the event we are unable to agree upon a value, a valuation by the Bankruptcy Court will be necessary to determine the total claim.
 
 
 41
 Appellate R. Vol. II, No. 6 (Exhibit 3) (emphasis added). This report of the agreement reached between Circuit City and Pioneer makes no reference to fair market value being the valuation method of choice. To the extent that Pioneer contends that fair market valuation was agreed upon, its contention is belied by a passage from its own Memorandum in Support of its Motion for Valuation:
 
 
 42
 Because Circuit City is likewise barred from arguing that it should be allowed to liquidate the building and to use the actual sales price to establish the value of the Old [Store] Property, the only issue that remains open is the appropriate valuation to be used. Pioneer is surrendering the property to Circuit City and foreclosure is not necessary. Circuit City can dispose of the Old [Store] Property by sale, and therefore, Pioneer submits that fair market value is the appropriate valuation to be used.... As discussed above, the fair market value of the building is $1,800,000. Accordingly, Pioneer submits that the Court should fix the value of the Old Store Property at $1,800,000.
 
 
 43
 J.A. at 15 (emphasis added). If Pioneer truly understood the Plan to preclude Circuit City from arguing for any other method of valuation than fair market value, it would not have considered the valuation method an "issue that remains open."
 
 
 44
 In sum, it is clear that the Plan does not specifically select any one method of valuing the Old Store Property, and leaves the whole issue of valuation open. If one method had been selected, Circuit City would have been estopped, by principles of res judicata, from arguing for a different method post-confirmation. But that is not the case. We may thus continue on to the merits of Circuit City's argument that the bankruptcy court used the wrong valuation method in determining the value of the Old Store Property, and its argument that the bankruptcy court erred by not deducting the disposition cost from the value determined.
 
 III
 
 45
 Circuit City argues that, under 11 U.S.C. Sec. 506(a) (1988), the value of the Old Store Property must be "determined in light of the purpose of the valuation and of the proposed disposition or use of such property," with the "creditor's interest" in mind. It further contends that, under 11 U.S.C. Sec. 1129(b)(2)(A)(iii) (1988), to ensure that the Plan's provisions are "fair and equitable" to it, the value of the Old Store Property must be determined with an eye to providing Circuit City with the "indubitable equivalent" of its claim against Pioneer. Circuit City maintains that the purpose of valuing the Old Store Property was to establish the amount of the setoff against its claim. Since Circuit City was to obtain the setoff immediately upon abandonment of the Old Store Property from Pioneer to Circuit City, Circuit City asserts that the liquidation value, not the fair market value, of the Old Store Property should have been the measure of value. Such valuation, Circuit City maintains, would have more closely approximated the realization of the indubitable equivalent of an immediate setoff. It also asserts that, since it proposed to dispose of the Old Store Property by sale, the disposition cost should have been deducted to more accurately reflect its interest in the property.
 
 
 46
 * In determining first whether the valuation method used by the bankruptcy court was appropriate, our inquiry begins with 11 U.S.C. Sec. 506(a):
 
 
 47
 An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
 
 
 48
 The Fourth Circuit, in Brown & Co. Sec. Corp. v. Balbus (In re Balbus), 933 F.2d 246 (4th Cir.1991), examined the legislative history of this section:
 
 
 49
 The legislative history of Sec. 506(a) indicates that valuation should be done ad hoc and that no fixed approach is correct:
 
 
 50
 "Value" does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case.
 
 
 51
 H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 6312. The Senate Report further clarifies the duty of the court in determining valuation:
 
 
 52
 While courts will have to determine value on a case-by-case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property.
 
 
 53
 S.Rep. No. 989, 95th Cong., 1st Sess. 68, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5854.
 
 
 54
 Id. at 249. A bankruptcy court performing a valuation analysis is to take into account all the relevant facts and assess the propriety of the various valuation methodologies as they relate to those facts.
 
 
 55
 Given that there was insufficient evidence before the bankruptcy court in the instant case that Circuit City would have to liquidate upon abandonment of the Old Store Property from Pioneer to Circuit City, we conclude that the court did not err in determining that the value of this transfer for purposes of a setoff against Circuit City's claim against Pioneer was equivalent to the fair market value (as opposed to liquidation value) of the Old Store Property. See, e.g., In re Fursman Ranch, 38 B.R. 907, 910 (Bankr.W.D.Mo.1984) ("Because the debtor is surrendering the property to the creditor, foreclosure is not necessary. Creditors can dispose of the property in a commercially reasonable manner. Thus, fair market value is the appropriate valuation."). Indeed, Circuit City seemed to inform the bankruptcy court in a pleading related to the valuation proceedings that, upon abandonment, it would "take the property back and sell it in a commercially reasonable manner. Foreclosure is not necessary. See In Re: Fursman Ranch, 38 B.R. 907 (BkrtcyW.D.Mo.1984)." J.A. at 22. The bankruptcy court essentially had to determine what the Old Store Property was worth to Circuit City upon abandonment. If Circuit City would have to liquidate, the value upon abandonment would obviously be less than if Circuit City could sell the property in a commercially reasonable manner. Given the facts of this case and the bankruptcy court's broad directive to fashion a value tailored to the specific facts of the case, the bankruptcy court did not err in valuing the Old Store Property at fair market value.[1]
 
 B
 
 56
 Turning to the issue of whether the bankruptcy court erred in not deducting the disposition cost of the Old Store Property, we find that a remand is necessary. After the bankruptcy court announced its determination of the value of the Old Store Property, it was asked by Mr. Hill, for Circuit City, "Is Your Honor going to deduct from that valuation a cost of disposition?" J.A. at 124. The court responded, "No. That's the value. I don't think that's an appropriate--that doesn't enter into the appraised value. That's a gross figure." Id. We find ourselves unable to glean from this broken commentary whether the bankruptcy court considered deduction of the disposition cost to be inappropriate based on the facts of the case, given, for example, a lack of sufficient credible evidence that Circuit City would in fact dispose of the property through sale, cf. Balbus, 933 F.2d at 251-52; whether it considered a disposition cost deduction to be generally inappropriate regardless of whether Circuit City proposed to sell; or whether it considered the evidence before it insufficient to base a calculation of the disposition cost upon even if it were to have considered the deduction otherwise appropriate. Finding key issues for purposes of our review to have been indeterminately resolved by the bankruptcy court, we remand for the limited purpose of allowing the bankruptcy court to supplement its reasons for denying the disposition cost deduction. Cf. Wilson v. First Nat'l Bank (In re Missionary Baptist Found. of Am., Inc.), 796 F.2d 752, 760-61 (5th Cir.1986).
 
 IV
 
 57
 In conclusion, we find that res judicata principles did not bar the bankruptcy court from valuing the Old Store Property according to valuation principles other than fair market value. We hold that the court did not err in selecting fair market value (as opposed to liquidation value) as the appropriate measure of value, and affirm this determination. Yet we vacate the district court's affirmance of the bankruptcy court's decision relating to the disposition cost, and remand the case to the district court with directions to further remand the case to the bankruptcy court for clarification of its reasons for denying the disposition cost deduction.
 
 
 
 [1]
 We also note that, though Circuit City urges this court to find that liquidation value is the appropriate measure of value, it presented no concrete evidence of such value at the valuation hearing. As the bankruptcy court commented:
 Mr. Dennis Diehl, who helped participate in [the] appraisal [of the Old Store Property], testified that the property would have a lesser value if orderly liquidated and even lesser value if there was a forced liquidation. He gave a range of values. However, he also testified that he had not conducted an appraisal through the orderly liquidation or forced liquidation context and the Court cannot speculate as to what the property would bring in one of those liquidation postures were it to deem that posture appropriate.
 J.A. at 136. The bankruptcy court is alluding here to the following exchange between Mr. Hill and Mr. Diehl:
 Q. [Mr. Hill:] When you testify as to the ... markets other than market value, why do you give fluctuations or ranges?
 A. [Mr. Diehl:] Basically because at this time I can't ethically as an appraiser give you a specific number because we have not performed an appraisal under those conditions.
 Q. Okay. No one has ever asked you to do a liquidation value appraisal?
 A. Not on this property, no.
 Id. at 92. Thus, though Mr. Diehl was called by Circuit City, he had never been asked to do a liquidation value appraisal. Based on the qualified testimony of Mr. Diehl (and Mr. Hodges as well), the various liquidation values ranged from 10% to 40% of market value. We find here justification for the bankruptcy court's suggestion that assigning a liquidation value to the Old Store Property would be mere speculation.