**In re James D. HUFF & Lucinda Huff, Debtors.**

**Bankruptcy No. 93–20557–C–13.**

United States Bankruptcy Court, W.D. Missouri, C.D.

Sept. 27, 1993.

Thomas M. Harrison, Craig A. Van Matre, P.C., Columbia, MO, for Capital Bank.

Janice A. Harder, Hindman, Scott, Goldstein & Harder, Columbia, MO, for debtors.

### MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Debtors filed their petition for rehabilitation under Chapter 13 on July 22, 1993. They have timely filed their plan and timely commenced their payments. The issue coming before the Court is what value the plan should allocate to the farm that is the main asset in the bankruptcy estate. More precisely, that issue is whether the hypothetical costs of foreclosure and sale should be a charge against said value or not. That answer then determines what portion of Capital Bank of Columbia's claim is secured and what is unsecured.

Capital Bank of Columbia (hereinafter Bank) made two loans to debtors. The first loan had a balance on the filing date of $12,227.99. It was secured by a 1989 GMC truck with a stipulated value of $10,-000.00. The second loan had a balance on the filing date of $54,558.71. It was secured by farm equipment, livestock and a second deed of trust on debtor's real estate. The parties have stipulated that the fair market value of the personal property collateral was $13,400.00 on the filing date. The parties have stipulated that the fair market value of the real estate was $215,-000.00 on the filing date. The parties have agreed that the balance due on a note secured by a first deed of trust is $189,-146.20 on the filing date. The debtors' plan proposes that debtors will retain the real estate (farm upon which debtors reside).

It is at this point that the parties differ. Debtors seek to deduct the estimated or hypothetical costs of foreclosure and sale from the $215,000.00 fair market value to arrive at the amount of the Bank's claim that is secured. Debtor's calculations would look like this:

|  |  |
|---|---|
| $215,000.00 | Realty Value |
| − $189,146.20 | Balance on First Lien |
| $ 25,853.80 | **Subtotal** |
| − $ 21,500.00 | 10% of FMV as Hypothetical Foreclosure Costs |
| $ 4,353.80 | Total Realty Secured Claim Value |
| + $ 13,400.00 | Personalty Value |
| + $ 10,000.00 | Truck Value |
| $ 27,753.80 | **Total Secured Claims** |

This figure would then be incorporated into the plan as follows:

$ 12,227.99 Truck Loan Balance
+ $ 54,558.71 Other Loan Balance
$ 66,786.70 **Total Loans**
− $ 27,753.80 Total Secured Balance
$ 39,032.90 **Total Unsecured Claims**

The Bank's calculations would not deduct the $21,500.00 for the hypothetical costs of foreclosure and sale and thus, the Bank asserts that it has a total secured balance of $49,253.80 and a total unsecured balance of $17,532.90.

The purpose of all this lies in the mandates of 11 U.S.C. § 1325(a)(5)(B) which provides the plan may not pay less than the allowed amount of a secured claim provided for under the plan. Debtors' plan provides for almost no dividend to unsecured creditors but they will pay secured creditors in full. Thus, the Court must decide whether such estimated or hypothetical costs are to be deducted from the fair market value in computing how much of the Bank's claim is secured, and will be paid.

The starting point for the analysis is 11 U.S.C. § 506(a). That section provides:

"(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest".

Counsel for both parties have indicated in their briefs that there is no reported decision in this district and that it is a case of first impression, at least in Missouri.

The Court's research indicates that while there have been a number of decisions involving the question, it apparently has not been resolved in the Eighth Circuit. The United States Supreme Court appears to have spoken to the issue in *United Savings Assn. v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), l.c.630. Therein the Supreme Court in considering § 506(a) said:

"The phrase 'value of such creditor's interest' in § 506(a) means 'the value of the collateral' ".

Although the Supreme Court did not consider the question of diminution of the value because of foreclosure and sale costs, it did consider the question of increase of the value by denying that a right to immediate possession was included within the definition. It would seem only equitable that if no addition to value may be included that no decrease to value should be included.

The Fourth Circuit went into more detail in considering the question. It went back to the legislative history. In *In re Balbus*, 933 F.2d 246 (4th Cir.1991) it cites H.R.Rep. No. 595, 95th Congress, 1st Sess. 356 (1977) as follows:

"Value" does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case".

Likewise in S.Rep. No. 989, 95th Cong., 1st Sess. 68, the Court cites the Senate as follows:

"While courts will have to determine value on a case-by-case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property".

The Fourth Circuit concluded that to deduct hypothetical costs of foreclosure and sale not only would be contrary to the Congressional intent, but would require "reading the second sentence of § 506(a) out of the statute". It, therefore, held that

where the debtor intended to retain the property, hypothetical foreclosure and sale costs would not be charged against the fair market value to determine the "value of the creditor's interest in the collateral".

This Court believes that this line of cases is correct and will follow it. The only discomfort the Court has in so doing is another case in this Circuit, i.e., *In Re Claeys,* 81 B.R. 985 (Bkr.D.N.D.1987) wherein Judge Hill in a thoughtful and detailed opinion concludes that even when the debtor intends to retain collateral, the usual costs attendant to converting same to cash ought to be deducted in arriving at the allowed amount of secured creditors' claims.

This Court does draw comfort from the fact that *Claeys* was decided before *Timbers of Inwood, Balbus,* and the decisions emerging from a number of courts that have adopted the standard proposed herein and hypothesizes that Judge Hill might rule differently in view of events of the last seven years.

Therefore, the Court rules that the value of creditor's secured claims are $49,253.80 and the unsecured claims total $17,532.90. Since the word *Nobleman* has been uttered by neither counsel, and the issues that might lurk behind such an utterance are not readily discernible from the evidence adduced, this Court will not second guess counsel and will deal only in the specific issues presented to it.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7025, Rules of Bankruptcy.

SO ORDERED.