**In re Gloria A. McCLURKIN, Debtor.**

**HUNTINGTON NATIONAL BANK, Plaintiff–Appellant,**

v.

**Frank PEES, Trustee, Defendant– Appellee.**

No. 93–3698.

United States Court of Appeals, Sixth Circuit.

Submitted June 23, 1994.

Decided Aug. 5, 1994.

Stephen A. Santangelo, Weltman, Weinberg & Associates, Columbus, OH (briefed), for Huntington Nat. Bank.

Jeffrey Mark Kellner, Worthington, OH (briefed), for Frank Pees.

Before: MARTIN, SUHRHEINRICH, and DAUGHTREY, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Pees (Trustee) objected to Huntington National Bank's (Creditor) proof of claim in McClurkin's (Debtor) Chapter 13 bankruptcy. The bankruptcy court sustained the Trustee's objection and the district court affirmed. Creditor appeals and we **REVERSE** and **REMAND** for further proceedings.

## I.

Creditor filed a proof of claim in McClurkin's Chapter 13 bankruptcy in the amount of $19,186.23. The claim is secured only by a second mortgage on Debtor's principal residence. Debtor's residence was appraised at $138,000.00 and the property is encumbered by a first mortgage in the amount of $110,512.98. Thus, because there remains $27,487.02 of "equity cushion" after subtracting the amount of the first mortgage, Creditor's proof of claim states that the debt is "fully secured."

Trustee objected to Creditor's proof of claim, acknowledging the amount of the debt and the appraised value of the collateral, but arguing that Creditor's claim should only be allowed as secured in the amount of $13,687.02, with the remainder allowed as unsecured. The Trustee arrived at this figure by taking the appraised value of the residence, $138,000.00, subtracting ten percent for "costs of sale," and then deducting the amount of the first mortgage. In Debtor's Chapter 13 plan, she proposes to keep her house and, thus, the "costs of sale" are purely hypothetical.

The bankruptcy court, on the authority of its earlier decision in *In re Weber*, 140 B.R. 707 (Bankr.S.D.Ohio 1992), sustained the Trustee's objection and held that Creditor had an allowed secured claim for $13,687.02 and an allowed unsecured claim in the amount of $5,499.79. The district court, relying on *In re Overholt*, 125 B.R. 202 (S.D.Ohio 1990), affirmed.[1]

The issue of whether, in valuing a creditor's secured claim, "costs of sale" must be deducted from the fair market value of the collateral even though the debtor proposes to retain the property, is an issue of first impression in this court. The position taken by the bankruptcy court and the district court has been rejected by the only two circuits to have addressed this issue. *See Lomas Mortgage USA v. Wiese (In re Wiese)*, 980 F.2d 1279 (9th Cir.1992), *cert. granted and judgment vacated on other grounds,* —— U.S. ——, 113 S.Ct. 2925, 124 L.Ed.2d 676 (1993) (remanding for reconsideration in light of *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993)); *Brown and Co. Sec. Corp. v. Balbus (In re Balbus)*, 933 F.2d 246 (4th Cir.1991).

## II.

The debate as to whether an allowance for hypothetical "costs of sale" is mandatory revolves around 11 U.S.C. § 506, which provides, in pertinent part:

An *allowed claim* of a creditor secured by a lien on property in which the estate has an interest ... is a *secured claim*

to the extent of the *value* of such creditor's interest in the estate's interest in such property

.    .    .    .    .

and is an *unsecured claim*

to the extent that the *value* of such creditor's interest ... is less than the amount of such an allowed claim.

---

1. Despite the numerous published cases on both sides of this issue, *see In re Jones*, 152 B.R. 155, 183 (Bankr.E.D.Mich.1993) (collecting cases), it appears that only the Southern District of Ohio has consistently deducted for hypothetical costs of sale. We note that this rule has not been adopted elsewhere in the Sixth Circuit, *see, e.g., In re Good*, 151 B.R. 445 (Bankr.N.D.Ohio 1993) (Chapter 12); *In re Jones*, 152 B.R. at 188 (Chapter 13); *In re Dinsmore*, 141 B.R. 499 (Bankr.

W.D.Mich.1992) (same), and that *In re Claeys*, 81 B.R. 985, 991 (Bankr.D.N.D.1987), the seminal case for the automatic deduction rule for hypothetical costs of sale and the case upon which both *In re Weber* and *In re Overholt* heavily rely, has recently been rejected in its own circuit, *see In re Huff*, 159 B.R. 262, 264 (Bankr.W.D.Mo. 1993) ("hypothesizing" that *Claeys* would have been decided differently in light of recent appellate and Supreme Court cases).

*Such value* shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property....

11 U.S.C. § 506(a) (emphasis and structure added).[2]

The legislative history emphasizes that § 506(a) provides a flexible, rather than static, approach to valuation.

"Value" does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in each case. H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6312. *See also* S.Rep. No. 989, 95th Cong., 1st Sess. 68, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5854.

### A.

Courts that favor deducting "costs of sale," even though no sale is contemplated by the debtor's reorganization plan, base their decision almost exclusively on the first sentence of § 506(a). They note that the statute does *not* equate a creditor's "secured claim" with the *value* of the collateral but, instead, with the value of the *creditor's interest* in the collateral. *See In re Overholt*, 125 B.R. at 214–15. Because a secured creditor's interest in collateral is always and only the right to force a *sale* of that collateral to satisfy the debtor's obligation, these courts conclude that the "creditor's interest" in the collateral is merely an interest in the proceeds of a sale of the collateral; proceeds which must be *net* of the costs of sale. *Id.* at 214.

These courts acknowledge that both the second sentence of § 506(a) and the legislative history indicate a case-by-case analysis, but nevertheless hold that an automatic deduction for hypothetical costs of foreclosure

must be made in *all* cases, even when the debtor proposes to keep the mortgaged property. *See In re Overholt*, 125 B.R. at 215 ("[t]he fact that a debtor intends to retain the collateral does not emasculate the fact that it is in the first instance the creditor's interest in the collateral that must be valued") (internal quotation marks omitted). *In re Overholt* attempted to reconcile this perceived "tension" between the first and second sentences of § 506(a) as follows:

The statute establishes a two-part inquiry to determine two separate issues. The second sentence requires that the court determine the *value of the property itself.* The first sentence directs the court to calculate the *creditor's share of that value* once it has been established.

*In re Overholt,* 125 B.R. at 215.[3] The court then concluded that, regardless of how the "value of the property itself" may vary from situation to situation, a "creditor's share of that value" must always reflect a reduction for costs of sale, which the court estimated for all cases, in the absence of evidence to the contrary, at ten percent. *Id.* at 214–15.

### B.

Courts that reject an automatic deduction for "costs of sale," on the other hand, focus primarily on the second sentence of § 506(a). *In re Balbus,* 933 F.2d at 252. This sentence directs that the valuation of the creditor's interest should be made in light of the "purpose" of the valuation and the proposed "disposition *or* use" of the collateral. *See* § 506(a) (emphasis added). These courts reason that the second sentence of § 506(a) would be reduced to surplusage if, in every case, the creditor's interest were limited by hypothetical costs of sale. *In re Balbus,* 933 F.2d at 251. Accordingly, these courts conclude that "the better view is that the secured creditor's interest may be valued for

---

**2.** All subsequent statutory references are to Title 11 of the United States Code unless otherwise indicated.

**3.** Although this "two part inquiry" provided a tidy solution to what the court perceived to be an ambiguity in § 506(a), it lacks a foundation in language of the statute. The second sentence of

§ 506(a) begins with the phrase "[s]uch value," the only possible referent of which is "the value of the creditor's interest" as twice used in the first sentence of § 506(a). Thus, both sentences of § 506(a) refer to the same "value." Therefore, we reject the bifurcated analysis devised in *In re Overholt.*

§ 506(a) purposes *without* superimposing a foreclosure or other sale of the collateral where a disposition of the property is *not reasonably in the offing.* " *Id.* (internal quotation marks omitted and emphasis added).

#### C.

Although the Supreme Court has never addressed the issue presented in the present case, it has consistently equated the creditor's interest in collateral with the value of that collateral in construing the valuation provision of § 506(a) in other contexts. The Court first construed § 506(a) in *United Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), where, in discussing "adequate protection" under § 361, the Court consulted § 506(a) for the meaning of the phrase "the [creditor's] interest in property." *Id.* at 372, 108 S.Ct. at 631. The Court concluded that "[t]he phrase 'value of such creditor's interest' in § 506(a) means 'the value of the collateral.' " *Id.* (citing the legislative history quoted, *supra*, at 403).

In *United States v. Ron Pair Enterprises*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), the Court held that an oversecured creditor could recover postpetition interest even though its lien arose as a matter of law rather than contract. *Id.* at 241–42, 109 S.Ct. at 1030–31. In reaching its holding, the Court noted that oversecured status, just as with undersecured status, is determined by § 506(a), which the Court paraphrased as "provid[ing] that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of the claim is considered unsecured." *Id.* at 239, 109 S.Ct. at 1029. The Court elaborated:

> Thus, a $100,000 claim, secured by a lien on property of a value of $60,000, is considered to be a secured claim to the extent of $60,000, and to be an unsecured claim for $40,000. *See* 3 Collier on Bankruptcy par. 506.04, p. 506–15 (15th ed. 1988) ("[S]ection 506(a) requires a bifurcation of a 'partially secured' or 'undersecured' claim into

separate and independent secured claim and unsecured claim components").

*Id.* at 240 n. 3, 109 S.Ct. at 1029 n. 3.[4]

Finally, in *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), discussed at greater length *infra*, the Court held that § 1322(b)(2) does not permit a "cramdown" of an undersecured creditor's claim secured solely by the debtor's principal place of residence. *Id.* at ——, 113 S.Ct. at 2111. The Court noted that, under § 506(a), "the bank is still the 'holder' of a 'secured claim,' because the [debtor's] home retains $23,500 of value as collateral. The portion of the bank's claim that exceeds $23,500 is an 'unsecured claim componen[t]' under § 506(a)." *Id.* at ——, 113 S.Ct. at 2110 (quoting *Ron Pair Enterprises*, 489 U.S. at 239 n. 3, 109 S.Ct. at 1029 n. 3). Again, as in *Ron Pair Enterprises* and *Timbers of Inwood*, the Court equated the "value of the creditor's interest" in the collateral with the value of the collateral.

These three discussions of § 506(a), although in no sense "holdings," illustrate that the Court has never viewed § 506(a) as limiting an undersecured creditor's interest to something *less* than the value of the collateral. To the contrary, they show that the Court has consistently viewed the "creditor's interest" as *equal* to the lesser of the amount of the lien or the value of the collateral. We see no reason to depart from this construction in the present application.

#### D.

The automatic deduction for "costs of sale" adopted in *In re Weber* and *In re Overholt* proceeds, in our view, from the erroneous assumption that a secured creditor "receives" only the net proceeds from the disposition of the collateral. *See In re Overholt*, 125 B.R. at 214. When a creditor forecloses on the property of a non-bankrupt debtor, or forecloses on the property of a bankrupt debtor after the trustee has abandoned the over-encumbered property, the creditor "receives" *all* of the proceeds of the sale. This amount is applied to the debtor's obligation which, by

---

4. Applying the calculations urged by the Debtor in the present case, the Court's hypothetical should have resulted in a secured claim of $54,-000 and an unsecured claim of $46,000.

that time, includes the outstanding principal and accrued interest *plus,* almost-universally as a matter of contract, the creditor's costs, fees and expenses connected with the foreclosure. There is no basis, however, for assuming that the costs of sale are paid with the "first dollar" of the sale proceeds rather than being added to the debtor's deficiency.[5]

The idea of limiting a creditor's "interest" in the collateral to the hypothetical "net" sale proceeds appears also to have been influenced by the Bankruptcy Code's treatment of *over* secured creditors. Under § 506(b), an oversecured creditor has a secured claim, to the extent of the excess value of the collateral, for any interest, fees, costs or charges provided for under the debtor's contract with the creditor. In such cases, however, the oversecured creditor is only oversecured, and thus has a secured claim for interest and expenses, to the extent of the *net* sales proceeds. *See* § 506(c). The treatment of *over* secured creditors, however, is not relevant to determining, and provides no basis for limiting, the *under* secured creditor's interest in the collateral.

Finally, the automatic deduction rule may have been an attempt, where a Chapter 13 debtor proposes to keep the property, to mirror the practice in cases where the property will be abandoned by the trustee under § 554. In such cases, a § 506(a) valuation is necessary to determine the size of the undersecured creditor's unsecured claim so that it can be paid, *pro rata,* out of the estate's general distribution. The purpose of reducing the estimated sale proceeds to reflect anticipated costs of sale, however, is to *increase* the creditor's unsecured claim so that it accurately reflects the projected shortfall. There is no reason for turning this practice against the creditor, and using it to *decrease* the amount of the secured claim, where the

creditor is prevented from foreclosing on the collateral by debtor's keeping of the property under a proposed reorganization plan.

**E.**

■ Based upon the foregoing, we adopt the construction of § 506(a) employed by the Supreme Court in other contexts and hold that, where the debtor proposes to retain the collateral under a reorganization plan, § 506(a) does not require or permit a reduction in the creditor's secured claim to account for purely hypothetical costs of sale.

**III.**

Creditor, although not moving to dismiss this appeal, has suggested that the issue of whether a ten percent deduction for hypothetical "costs of sale" in a § 506(a) valuation has been rendered "moot" by *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), which was handed down after the district court's decision in this case. Debtor replies that Creditor may not "invoke" *Nobelman* because it failed to raise § 1322(b)(2) in the bankruptcy and district courts. Both arguments are misdirected.

*Nobelman* resolved a split among the circuits concerning whether a Chapter 13 debtor may "cramdown" what is, in most cases, the Debtor's largest debt, *i.e.,* his home mortgage. At the center of this debate is § 1322(b)(2), which provides that a Chapter 13 debtor's reorganization plan may

> modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffect-

**5.** We realize that the automatic deduction rule of *In re Overholt* is not as obviously wrong when, as in this case, the creditor is a junior mortgagee. Assuming that it is the senior mortgagee who forecloses, the junior mortgagee may properly be said to be limited to the "net" sale proceeds, *i.e.,* "net" of the full amount of the debtor's obligation, including fees and expenses of collection if provided for by contract, to the senior mortgagee. Application of the "automatic deduction" rule has *never* been limited to junior mortgagees,

however, nor do we believe such a limitation is proper. There is no way of determining whether the presumptive ten percent deduction is sufficient to encompass the attorney's fees and other incidentals, in addition to the sales costs, that a senior mortgagee recoups before a junior mortgagee takes anything. Nor is there any reason to assume, in every case, that it will be the senior mortgagee who forecloses, and thus incurs these costs, rather than the junior mortgagee.

# 406

ed the rights of holders of any class of claims.

§ 1322(b)(2) (emphasis added).

The Court rejected the argument that this special protection for home mortgagees only extends to the amount of the creditor's "secured claim" as determined under § 506(a). *Nobelman,* — U.S. at — – —, 113 S.Ct. at 2109–10. By the provision's plain language, the Court held, the creditor need only be a holder of *a* secured claim which is secured only by the debtor's principal residence. *Id.* at —, 113 S.Ct. at 2111. Thus, although a creditor whose only security is the debtor's home may be *under* secured, § 1322(b)(2) protects the creditor's entire claim and lien from modification, *i.e.,* cramdown. *Id.*

◼ Creditor argues that, because it is a holder of a claim secured only by the Debtor's principal residence, *Nobelman* prohibits the Trustee from bifurcating its claim under § 506(a). Therefore, Creditor contends, we need not address the appropriateness of the automatic deduction rule. Creditor's position, however, was clearly rejected by the Court in *Nobelman,* in which the Court specifically noted that the debtors "were *correct* in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim." *Nobelman,* — U.S. at —, 113 S.Ct. at 2110 (emphasis added). The Court simply held that § 1322(b)(2) prohibits confirming a reorganization plan which "give[s] effect" to such bifurcation, *i.e.,* modifies the creditor's rights with respect to *either* the creditor's secured or unsecured claim components, where the creditor is among the class of creditors (home-mortgagees) specially protected by Congress. *Id.* at —, 113 S.Ct. at 2111. Accordingly, we hold that the Trustee in this case properly sought a valuation of the creditor's claim under § 506(a) and that the validity of the Trustee's deduction for hypothetical costs of sale is squarely presented.[6]

◼ Debtor's argument to the effect that Creditor has "waived" the protections of § 1322(b)(2) by not "raising" it earlier is equally unavailing because it ignores the procedural posture of this case. This appeal arises from the *Trustee*'s objection to the *Creditor*'s proof of claim. The proper procedure in which to "raise" § 1322(b)(2) is as an objection under § 1325(a)(1) to the confirmation of the debtor's plan, not as a rejoinder to the trustee's request for a § 506(a) valuation. Because *Nobelman* indicates that a § 506(a) valuation is proper notwithstanding § 1322(b)(2), Creditor's failure to "raise" this argument below has no effect on the present dispute over how that valuation should be done and will not prevent Creditor, if necessary, from raising § 1322(b)(2) in an objection to Debtor's reorganization plan.

Its practical effect on this case notwithstanding, *Nobelman* is not dispositive of the present appeal. Although *Nobelman* might have provided ample incentive for Creditor to have dismissed this appeal, its having chosen not to do so leaves this court with no alternative but to address and resolve the underlying dispute regarding the automatic reduction of Creditor's secured claim to account for the hypothetical costs of selling Debtor's house.

## IV.

Accordingly, because the issue presented survives the Supreme Court's intervening decision in *Nobelman,* and because the plain language of § 506(a) does not contemplate a reduction of a creditor's secured claim to account for "hypothetical" costs of sale where a sale of the collateral is not contemplated by the parties, we **REVERSE** the decision of the district court and **REMAND** for further proceedings.

---

6. A § 506(a) valuation in Chapter 13 cases would retain significant importance if, as several courts have held, neither § 1322(b)(2) nor *Nobelman* prohibit modification of the rights of a junior mortgagee whose claim is "wholly unsecured," *i.e.,* where the value of the collateral is insuffi-

cient to cover the senior debt. *See, e.g., Sette v. Bello (In re Sette),* 164 B.R. 453 (Bankr.E.D.N.Y. 1994); *In re Kidd,* 161 B.R. 769 (Bankr.E.D.N.C. 1993); *In re Williams,* 161 B.R. 27 (Bankr. E.D.Ky.1993). We need not address this reading of *Nobelman,* however, in the present context.