**In the Matter of: Elray RASH and Jean Rash, Debtors.**

**ASSOCIATES COMMERCIAL CORPORATION, Appellant,**

**v.**

**Elray RASH and Jean Rash, Appellees.**

**No. 93–5396.**

United States Court of Appeals, Fifth Circuit.

Aug. 16, 1995.

Ben L. Aderholt, Tina Snelling, Hirsch, Glover, Robinson & Sheiness, Houston, TX, for appellant.

Rebecca A. Leigh, Houston, TX, amicus curiae, for M.B.C.C.

Pamela A. Bassel, Dabney D. Bassel, Law, Snakard & Gambill, Fort Worth, TX, Erin B. Shank, Nationsbank of Texas, N.A., Dallas, TX, amicus, curiae, for Nationsbank.

John J. Durkay, Mehaffy & Weber, Beaumont, TX, Robert E. Barron, Nederland, TX, for appellee.

Norma L. Hammes, James J. Gold, San Jose, CA, amicus curiae, for Nat. Ass'n. of Consumer Bankruptcy Attys.

ON PETITION FOR REHEARING

Before REYNALDO G. GARZA, SMITH, and PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The petition for panel rehearing is DENIED. The opinion, 31 F.3d 325 (5th Cir. 1994), is modified to delete, as *dicta,* the last portion of part II, beginning with the incomplete paragraph that begins on 31 F.3d at 329, through the end of part II, *id.* at 331.

In their suggestion for rehearing en banc, which remains pending despite our denial of panel rehearing, the debtors assail this court's holding that retail or replacement value is to be used to value collateral that a debtor proposes to retain in a chapter 13 plan. Our opinion, *id.* at 329, speaks for itself on that issue. We wish now to note, however, that since this case was decided, the law of the various circuits has moved decidedly in the direction we have proposed.

For example, in *Metrobank v. Trimble (In re Trimble),* 50 F.3d 530 (8th Cir.1995), the court specifically approved of our approach as follows:

> We adopt the reasoning of the Fifth Circuit in *In re Rash,* and other courts that have focused on the second sentence

of section 506(a), and we now conclude that the value of Metrobank's lien interest is properly based on the *retail value* of the collateral without deduction for costs of sale. *We agree with the Fifth Circuit* that the retail valuation method is the only method that gives full effect to the entire language of § 506(a).... Under the wholesale valuation method, the creditor's interest would always be valued at the amount the creditor would receive upon disposition of the collateral, regardless of the purpose of the valuation or of the proposed disposition or use of the property. The wholesale method would not be affected by whether the debtor intended to release the property or intended, instead, to retain and use the property. Rather, where a debtor intends to retain and use the collateral, the purpose of the valuation is to determine the amount an undersecured creditor will be paid for the debtor's continued possession and use of the collateral, not to determine the amount such creditor would receive if it hypothetically had to repossess and sell the collateral. Such an interpretation ignores the express dictates of section 506(a).

*Id.* at 531–32 (emphasis added, quotation from *Rash,* 31 F.3d at 329, omitted). Thus, the Eighth Circuit agrees with our conclusion that retail value is the proper measure.

A few days after *Trimble* was decided, the First Circuit followed suit, in *Winthrop Old Farm Nurseries v. New Bedford Inst. for Sav. (In re Winthrop Old Farm Nurseries),* 50 F.3d 72 (1st Cir.1995). Like the Eighth Circuit, the *Winthrop* court gave meaning to the second sentence of 11 U.S.C. § 506(a):

... A number of courts ..., including four Circuit Courts, have adhered to this clear expression of congressional intent and declined to value collateral that a debtor proposes to retain based on a hypothetical foreclosure sale. These courts reason that because the reorganizing debtor proposes to retain and use the collateral, it should not be valued as if it were being liquidated; rather, courts should value the collateral "in light of" the debtor's proposal to retain it and ascribe to it its going-concern or fair market value with no deduction for hypothetical costs of sale.[2]

. . . . .

We are persuaded that [this] line of cases [1] correctly interprets the statute[,] gives meaning to both sentences of § 506(a), and enables bankruptcy courts to exercise the flexibility Congress intended. By retaining collateral, a Chapter 11 debtor is ensuring that the very event Winthrop proposes to use to value the property—a foreclosure sale—will not take place. At the same time, the debtor should not be heard to argue that, in valuing the collateral, the court should disregard the very event that, according to the debtor's plan, *will* take place—namely, the debtor's use of the collateral to generate an income stream. In ordinary circumstances the present value of the income stream would be equal to the collateral's fair market value. Under such circumstances, a court remains faithful to the dictates of § 506(a) by valuing the creditor's interest in the collateral in light of the proposed post-bankruptcy reality: no foreclosure sale and economic benefit for the debtor derived from the collateral equal to or greater than its fair market value. Our approach allows the bankruptcy court, using its informed discretion and applying historic principles of equity, to adopt in each

---

1. The court also cites, in addition to the four circuit cases (*Rash, McClurkin, Lomas,* and *Balbus* ), the following: *In re Case,* 115 B.R. 666, 670 (9th Cir. BAP 1990) (holding that for chapter 12 plan confirmation purposes, hypothetical costs should not be deducted from fair market value in valuing collateral to be retained by debtor); *In re Arnette,* 156 B.R. 366, 368 (Bankr. D.Conn.1993) (holding that motor vehicle to be retained by chapter 13 debtor "should be valued at the price the debtor could get for it in a free and open market, i.e., its fair market value"); *In*

*re Green,* 151 B.R. 501 (Bankr.D.Minn.1993) (valuing car to be retained by chapter 13 debtor at retail, rather than wholesale, value); *In re Savannah Gardens–Oaktree,* 146 B.R. 306, 310 (Bankr. S.D.Ga.1992) (using fair market value to value apartment complex in chapter 11 adequate protection context); *In re Usry,* 106 B.R. 759, 762 (Bankr.M.D.Ga.1989) (concluding that in light of fact that chapter 11 and chapter 12 debtors planned to retain collateral to produce income, secured claim equaled amount of stipulated fair market value without deduction for hypothetical liquidation costs).

case the valuation method that is fairest given the prevailing circumstances.

*The [contrary] interpretation ... renders the second sentence of § 506(a) virtually meaningless....*

[2] *See, e.g., In re McClurkin,* 31 F.3d 401, 405 (6th Cir.1994) (holding that § 506(a) "does not require or permit a reduction in the creditor's secured claim to account for purely hypothetical costs of sale" of Chapter 13 debtor's residence); *Matter of Rash,* 31 F.3d 325, 329–31 (5th Cir. 1994) (holding that truck to be retained by Chapter 13 debtor must be valued at replacement cost to debtor because foreclosure value fails to account for debtor's proposed use of collateral); *Lomas Mortgage USA v. Wiese,* 980 F.2d 1279, 1284–86 (9th Cir.1992) (holding that second sentence of § 506(a) precludes deduction of hypothetical costs of sale in valuing Chapter 13 debtor's real property to be retained by debtor), ... *vacated on other grounds,* —— U.S. ——, 113 S.Ct. 2925, 124 L.Ed.2d 676 (1993) ...; *In re Balbus,* 933 F.2d 246, 252 (4th Cir.1991) (same)....

50 F.3d at 74–76 (second emphasis added).

Finally, in *Huntington Nat'l Bank v. Pees (In re McClurkin),* 31 F.3d 401 (6th Cir. 1994), decided the week *Rash* was argued but before it was issued, the court focused, as we did in *Rash,* on the second sentence of § 506(a) in declaring that in a chapter 13 proceeding where, as here, the collateral is being retained by the debtor, no hypothetical costs of sale should be deducted, because " 'a disposition of the property is not reasonably in the offing.' " *Id.* at 404 (quoting *Brown & Co. Sec. Corp. v. Balbus (In re Balbus),* 933 F.2d 246, 251 (4th Cir.1991)). This holding, tantamount to declaring replacement, or retail, value, to be appropriate, is cited in the passage from *Winthrop* that we have quoted above.

It is so ORDERED.

ROBERT M. PARKER, Circuit Judge, dissenting:

I respectfully dissent from the panel's denial of the petition for rehearing. I would grant the petition because I believe the original panel opinion was in error.

I

Because Associates Commercial Corp. (ACC) refused to accept Rash's Chapter 13 plan, Rash was compelled to invoke the provisions of § 1325(a)(5) of the Bankruptcy Code, which provides, in relevant part:

[T]he court shall confirm a plan if—

.  .  .  .  .

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder....

11 U.S.C. § 1325(a)(5) (emphasis added).

Since Rash proposed to retain the truck, he had only one alternative under § 1325(a)(5)—allow ACC to retain its lien and pay ACC the present value of its secured claim. Since, under the code, the value of the secured claim is equivalent to the value of the collateral, *see* 11 U.S.C. § 506(a), the bankruptcy court had to resolve the dispute between ACC and Rash over the value of the truck. The bankruptcy court correctly held that the value of ACC's secured claim under § 506(a) was the truck's value on the wholesale market because that is all ACC, a lender not in the business of selling trucks, would be able to realize if it were forced to take possession and dispose of the truck.

II

Under § 1325(a)(5), with respect to each allowed secured claim, the debtor must either surrender the property securing the claim, i.e., the collateral, to the holder of the claim, or allow the creditor to retain its lien on the collateral and pay the creditor, over the life of the plan, the present value of its secured claim. These two § 1325 alternatives are set forth as equivalent methods of protecting the secured creditor's interest—retention of lien and payment, or receipt of the collateral.

The purpose of determining the present value of the collateral, and thus the secured claim, is to see to it that the creditor will receive as much money under the plan, per § 1325(a)(5)(B), as the creditor would receive were it permitted to sell the collateral in a commercially reasonable manner.

Given the purpose of this valuation, it is appropriate to value the collateral from the creditor's perspective.[2] In this case, the record supports the bankruptcy court's use of wholesale value. ACC is not a retail dealer in Kenworth trucks. Rather, ACC is merely the assignee of the security agreement and loan documents. Accordingly, the amount ACC would realize from a resale would likely be the truck's wholesale value from sale to a retail dealer. ACC presented no evidence that it had the ability to dispose of the truck at its retail value.

Furthermore, assigning retail value to the collateral simply ignores the inherent risk that the creditor took when it made or obtained the loan—the risk that if the debtor defaulted, the creditor might have to repossess the collateral and sell it at less than retail value. This is a risk commercial lenders are well-equipped to address on the front end of the lending process by requiring an adequate down-payment or credit insurance. By properly evaluating the value of the collateral at the time of making or obtaining a loan, a lender is fully capable of protecting against potential loss in case of default. Thus, allowing a secured claim in an amount greater than the creditor's potential recovery on repossession and sale is granting the creditor more protection than that for which it bargained.

### III

The panel opinion correctly focuses on 11 U.S.C. § 506(a) in determining the proper manner of valuing the collateral. This section states, in pertinent part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a). This section clearly contemplates that the courts will determine an asset's value on a case-by-case basis. *See In re Mitchell*, 954 F.2d 557 (9th Cir.1992) (citing S.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News pp. 5787, 5854).

The panel opinion holds that, read as a whole, this section requires that the collateral be valued from the debtor's perspective. The opinion first looks to the second sentence of § 506(a): "Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property...." Clearly, the value is to be determined in light of the purpose of the valuation. However, to understand this, it is crucial to realize that § 506(a) valuations are performed in cases under all chapters of the Bankruptcy Code and in many different contexts within those cases. Thus, the valuation of the creditor's interest must be informed by the specific purpose for which the valuation is made—in Rash's case, cram down under § 1325(a)(5). As discussed above, the language and purpose of § 1325(a)(5) supports valuation from the creditor's perspective.

Next, the panel opinion calls on the "disposition or use" clause in the second sentence of § 506(a) to support its holding. That clause directs us to value the creditor's interest in light of the proposed disposition or use of the collateral. However, the debtor's use of retained collateral, as in this case, should only be relevant to the extent that it affects the creditor's interest in the collateral. In other words, disposition or use is considered

---

**2.** By using the short-hand phrases "creditor's perspective" and "debtor's perspective" I refer to the primary dispute in this case: whether the "value" of the collateral is to be determined by its value to the creditor or its value to the debtor.

because of the effect it could have on the intrinsic value of the collateral, and thus on the value of the property by which the debt is secured. To the extent the property is used for its intended purpose and is properly insured and maintained, the debtor's use of the property, under a Chapter 13 plan, should not affect its valuation. The debtor's use of the property should be a consideration only to the extent that it represents an increased risk to the creditor's security.

The panel opinion also emphasizes the "estate's interest in such property" language in the first sentence of § 506(a) to support its notion that the "creditor's interest is derivatively defined by the value of the debtor's interest in the property." This language, however, does not change the primary thrust of § 506(a): an allowed claim is only a "secured claim" to the extent actually "secured" by the value of the collateral. No debt can be said to be "secured" merely by the debtor's desire to retain the collateral rather than buy a replacement. Rather, a debt can be secured, within the meaning of the Bankruptcy Code, only by the value of the collateral on the creditor's repossession and sale.

As *Collier on Bankruptcy* explains, the "estate's interest" language is designed to prompt a determination of "whether the estate actually has an interest in the collateral," and to prompt an examination of the nature of the estate's interest in the collateral. *See* 3 Lawrence P. King, *Collier on Bankruptcy* para. 506.04, at 506–17 to –19 (15th ed. 1994). As *Collier* observes:

> The interest of the estate in the subject property may be of a nature other than an ownership interest, such as a leasehold interest. Alternatively, the debtor may not be the sole owner. In such an instance the value of the estate's interest in the subject property may be substantially different than, and may even be determined appropriately by means of a different method than, the value of the property itself.

*Id.* at 506–18. Thus, the key purpose of the "in the estate's interest" language is to point out that the value of the estate's interest may differ from the value of the collateral. The language is not the critical focus of the valuation question, however, for as § 506(a) clearly states, it is the "*creditor's interest* in the estate's interest in such property" that is to be valued. Simply put, the estate's interest is only relevant as a starting point—the value of a secured claim is ultimately determined by ascertaining the creditor's stake in this interest. Thus, § 506(a) clearly requires us to determine the value of the collateral from the creditor's perspective, and the panel opinion's valuation of the retained asset based on the debtor's perspective is misplaced.

This conclusion does not mean that retail value is always inappropriate. For example, a secured creditor who is also a retail dealer may be able to resell for retail value. However, this determination is necessarily fact-specific and should be made on a case-by-case basis from the creditor's perspective.

IV

As a result of the panel opinion, the secured creditor, ACC, will receive a secured claim valued at retail value, which the panel defines as the amount that the debtor Rash would have to pay to purchase another similar truck. The net effect of the panel's holding is that ACC, a nondealer creditor, receives a windfall from Rash's bankruptcy in the form of a retail mark-up over what it would have been entitled to receive under state law upon repossession and sale of the collateral. Because I believe this is an incorrect interpretation of the Bankruptcy Code, I would grant the debtor's petition for rehearing and reconsider our previous panel opinion.