In re Sharon Ann TUMMINELLO,
Debtor.

James Tumminello, Movant.

No. 99–46373–293.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Oct. 15, 2001.

Timothy Mullin, Clayton, MO, for Debtor.

Joseph S. Rosenthal, St. Peters, MO, for Movant.

John V. LaBarge, St. Louis, MO, trustee.

### MEMORANDUM OPINION

DAVID P. McDONALD, Chief Judge.

This case is before the Court on James Tumminello's Motion to Dismiss Sharon Ann Tumminello's Chapter 13 Case and Sharon's objection to James' claim. Because the judicial lien securing Sharon's obligations under a state court judgment attached to the real property prior to Sharon obtaining her interest in the real property, Sharon's objection will be overruled. Also, because Sharon's Chapter 13 Plan fails to provide for the payment of James' allowed secured claim, James' motion to dismiss will be granted; provided, however, that if Sharon files an amended Plan that provides for the payment of such claim within 15 days of this claim, this dismissal shall be set aside.

### JURISDICTION AND VENUE

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409.

### PROCEDURAL BACKGROUND

The Circuit Court of St. Louis County entered a judgment on April 22, 1999 terminating the marriage between Sharon and James. The state court judgment also awarded James $23,750.00 as compensation for his portion of martial property that Sharon retained and required Sharon to pay all martial debts. As a matter of Missouri state law, the entry of the judgment created a lien on Sharon's real estate

located in St. Louis County (the "real estate"). Sharon filed for protection under Chapter 13 of the United States Bankruptcy Code on June 10, 1999.

Sharon's Chapter 13 Plan provided that secured claims would be paid in full at an interest rate of 11.25% per annum but listed the amount of secured debts as $0. Sharon, however, listed a total of $184.550 in secured debt, including James' claim in the amount of $23,750.00, on her Schedule D filed with this Court. This Court confirmed Sharon's plan on October 27, 1999.

James filed a proof of claim on August 2, 1999 in the amount of $23,750 which asserts that the claim is secured by the real estate. James increased his claim to $49,350 on June 20, 2000 to reflect Sharon's failure to pay the martial debts as mandated in the state court judgment.

James filed a motion to dismiss Sharon's Chapter 13 case asserting that Sharon's plan failed to pay the value of his claim secured by the real estate in violation of 11 U.S.C. § 1325(a)(5). Sharon then filed an objection to James' claim seeking to avoid the lien on real property pursuant to 11 U.S.C. § 522(f)(1)(A).

## FACTUAL FINDINGS

The parties submitted their respective claims on the following stipulated facts:

1. The state court entered its judgment dissolving the parties' marriage and ordering Sharon to: (1) pay James $23,750 for his share of the value of the martial property that Sharon retained and; (2) pay the martial debts. James' total claim against the estate arising from Sharon's failure to pay these obligations is $49,350.

2. Sharon filed her petition under Chapter 13 of the Bankruptcy Code on June 10, 1999.

3. Two deeds of trust, senior to the lien securing Sharon's obligations under the state court judgment, encumbers the real

estate in question. At the time of filing, the note secured by the first deed of trust had a principal balance of $113,248.63 and the note secured by the second deed of trust had a principal balance of $20,695.31.

4. Sharon resides on the real estate.

5. Sharon values the real estate at $152,000.00 and James values it at $174,000.

## DISCUSSION

### A. Did James waive his objection to the Plan

█ Sharon's Chapter 13 Plan does not provided for payment to James for the value of his secured claim. James failed to object to Sharon's Chapter 13 Plan prior to this Court's confirmation of that Plan. Generally, confirmation of a Chapter 13 plan is *res judicata* as to all issues in the bankruptcy. 11 U.S.C. § 1307(a). Thus, a creditor who fails to object to the plan waives his right to collaterally attack the plan post-confirmation. *Andersen v. UNI-PAC–NEBHELP (In re Andersen)*, 179 F.3d 1253, 1258 (10th Cir.1999).

█ However, an exception to this general rule is the issue of the validity of a secured claim. Once the creditor files a proof of claim, the claim is deemed allowed and the claim is *prima facie* evidence of its validity and amount. 11 U.S.C. § 502(a); *FDIC v. Union Entities (In re Be–Mac Trans. Co.)*, 83 F.3d 1020, 1025 (8th Cir. 1996). Thus, the debtor has the burden of objecting to the claim before the court may disallow the claim. *Id.* Accordingly, provided the secured creditor has properly filed a proof of claim, the confirmation of a Chapter 13 plan cannot extinguish the secured claim unless the debtor, or another party in interest, has placed the validity of such claim before the court. *Id.; Harmon v. United States*, 101 F.3d 574, 582–83 (8th Cir.1996).

■ Here, James filed a valid proof of claim prior to confirmation asserting a secured claim. Sharon listed the judgment debt owed to James as a secured debt, subject to avoidance, in her schedule of secured claims.[1] Sharon did not seek to avoid James' lien prior to confirmation. Thus, this Court's confirmation of Sharon's Chapter 13 Plan did not extinguish James' lien on the real property in question.

## B. May Sharon Avoid the Lien.

■ Sharon seeks to avoid James' lien on the real property under 11 U.S.C. § 522(f)(1)(A). Section 522(f)(1)(A) states in relevant part: "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled... if such lien is a judicial lien." A lien that secures a person's obligations under a judgment is a judicial lien. 11 U.S.C. § 101(36); *In re Willets*, 262 B.R. 552, 555 (Bankr.N.D.Fla. 2001). Thus, the key issue in the instant case is whether the lien in favor of James affixed to Sharon's interest in the real estate.

■ The Supreme Court has held that under § 522(f)(1), a debtor can only avoid a lien if her interest in the property existed prior to the creation of the lien. *Farrey v. Sanderfoot*, 500 U.S. 291, 297–98, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). The rationale underlying this rule is that the "fixing of a lien" language connotes a temporal element in the statute. *Id.* at 297, 111 S.Ct. 1825. Specifically, the Supreme Court observed that only if the debtor's interest in the property existed prior to the creation of the lien, could the lien affix to the debtor's interest. *Id.*

■ State law determines whether the debtor possessed her interest in the property prior to the creation of the judicial lien. *Id.* at 299, 111 S.Ct. 1825. Under Missouri law married persons hold property as tenants by the entirety. *Kirkham v. Kirkham*, 975 S.W.2d 500, 504 (Mo.Ct.App.1998). Tenants by the entirety each hold an undivided interest in the whole property. *Wry v. Wade*, 814 S.W.2d 655, 659 (Mo.Ct.App.1991). Because one of the requirements of a tenancy by the entirety is that the tenants be married, the tenancy will terminate automatically upon divorce. *State ex. rel. Roll v. Ellison*, 290 Mo. 28, 233 S.W. 1065 (1921). Further, under Missouri law, a lien on the real property of the judgment debtor arises automatically upon the entry of the judgment. Mo. R. Civ. P. 74.08; *Boatmen's Bank v. Foster*, 878 S.W.2d 506, 509 n. 4 (Mo.Ct.App.1994).

■ Here, because Missouri's property scheme recognizes tenants by the entirety, Sharon's interest in the real estate was dissolved upon the state court judgment terminating the marriage. Also, the state court judgment simultaneously created Sharon's current interest in the real estate and the lien on the real property. Under these circumstances, Sharon did not possess her current interest in the real estate prior to the creation of the lien on the real estate. *Sanderfoot*, 500 U.S. at 303, 111 S.Ct. 1825 (Kennedy, J., concurring) (stating that under a tenancy by the entirety scheme, the debtor's interest in the property cannot proceed the judicial lien securing an obligation in a divorce proceeding because both are necessarily created simultaneously). Accordingly, the judicial

---

1. James and Sharon both initially listed the value of the secured claim as $23,750. Both parties, however, in their joint stipulation of facts concede that the value of James' claim is now $49,350 because of Sharon's failure to pay certain martial debts as required under the state court judgment.

lien did not affix to Sharon's interest in the property and she may not avoid the lien under § 522(f)(1)(A).

### C. The Amount of James' Secured Claim

Section 506(a) states in relevant part:

"An allowed claim of a creditor secured by a lien on property in which the estate has an interest. . .is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property. . . , and is an unsecured claim to the extent that the value of such creditor's interest. . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property. . ."

Here, the amount of James' claim is $49,350 and the senior deeds of trust secure payments on notes totaling $133,943.94. Thus, in order to determine what part of this claim is secured, the Court must determine the value of the real estate that secured Sharon's obligations under the state court judgment.[2]

 The proper value for a piece of collateral in a Chapter 13 cram down is the price the Debtor would have to pay to replace the collateral. *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 960, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). Sharon asserts that the value of the real estate is $152,000 while James claims the value is $174,000. The appraisals demonstrate that sale prices for comparable real estate in the same subdivision range from $169,500 to $177,800 with an average of $174,000.[3] Also, the evidence indicates that the real estate is in average condition and has been adequately maintained.

Because the average sale price of comparable real estate is the best estimator of what Sharon would have to pay to replace the real estate, the Court finds that the value of the real estate for purposes of § 506(a) is $174,000. Thus, the value of James' allowed secured claim is $174,000 minus $133,943, which equals $40,057. The remaining $9,293 is the value of the unsecured portion of his claim.

### CONCLUSION

Sharon's interest in the real estate did not exist prior to the creation of the judicial lien on the real property. Accordingly, Sharon cannot avoid the lien under § 522(f)(1)(A) and her objection to James' claim is overruled. Also, the value of James' allowed secured claim under § 506(a) is $40,057 and the value of his unsecured claim is $9,293. Further, James' motion to dismiss will be granted; provided however, that the dismissal shall be set aside if Sharon files an amended plan within fifteen days that provides for the payment of James' allowed secured claim.

---

2. The lien stripping prohibition on claims secured by real property contained in 11 U.S.C. § 1322(b)(2) is not applicable here because James' claim in the real estate is not secured by a security interest as defined by the Bankruptcy Code. A security interest under the Bankruptcy Code is defined as an agreement that creates or provides for a security interest. 11 U.S.C. § 101(50). Because a judicial lien is non-consensual, it is not an agreement that creates a security interest. *In re DeMaggio*, 175 B.R. 144, 147 (Bankr.D.N.H.1994).

3. The parties stipulated that the cost of a hypothetical Sheriff's sales should be deducted from the value of the real estate under § 506(a). However, because the proper method of determining the value of the collateral in the cram down context is the replacement cost, not the liquidation cost, the cost of a hypothetical liquidation sale may not be deducted. *Huntington Nat'l Bank v. Pees (In re McClurkin)*, 31 F.3d 401, 405 (6th Cir. 1994).

An Order consistent with this Memorandum Opinion will be entered this date.